1  Kevin Quillinan                                                    pro se
2  PO. Box 9092 Berkeley, CA. 94709
   Cell: 510 495 9722
3  danlaw46@gmail.com

4

5

6              **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
7                      **Oakland, California**

8

9  **KEVIN QUILLINAN,**                   **Case No: 17-CV-00077-KAW**

10                  **Plaintiff**          **FIRST AMENDED COMPLAINT**

11

12 **vs.**                                **CIVIL ACTION UNDER (RICO)**

13 **RUSSELL  AINSWORTH,  EVAN ZANE**     Racketeer Influenced
   **DANIEL BORNSTEIN, MANUEL PEREZ**          Corrupt  Organization
14 **CORINA  AGUILAR, ANDREW THAYER,**               18 U.S.C. 1961 et seq., and:
   **ABIGAIL BORNSTEIN,  NANCY SNIDER,**
15 **DANIEL CHEUNG, TYLER FORMAN,**       **INJUNCTIVE RELIEF**
   **DANIEL FINEMAN, JON LOEVY,**               Pursuant to 18 U.S.C. 1964(a)
16 **JOEL FELDMAN, BRUCE GOLDSTONE,**
   **DEIDRA MAE HARPER, GOSPA LUCIK,**        **JURY TRIAL REQUESTED**
17 **TERAH OLSON, , JOSEPH JANSSEN**
   **DIANNE MURPHY, GAVIN KOGAN,**          [To  add]
18 **MICHAEL KANOVITZ,**
   **JEFFERY GILLES, ASHLEY PETERSON,**    **GRUPO FLOR CORPORATION;**
19 **ERVIN YOCUM, MIKE WILLIAMS**          **GRUPO FLOR, LLC;**
   **RICHARD SILVERSTEIN,**                **GRUPO FLOR CULTIVATIONS, LLC;**
20 **DENNIS THOMPSON,**                    **GRUPO FLOR DISPENSARIES, LLC;**
   **ROBERT WEAKLEY,**                     **GRUPO FLOR OPERATIONS, LLC;**
21 **MARK AINSWORTH,**                     **WES-CO INDUSTRIES;**
   **ZIVORAD ZIVANOVIC,**                  **DOES 1 EVAN ZANE;**
22 **PAUL HENDERSON**                      **DOES 2 CORINA AGUILAR**
   **MARTIN SCHNEIDER,**
23 **DIMITRY SHKOLNIKOV,**                 [To delete]
   **BEEHIVE DISTRIBUTOR,**
24 **BEEHIVE DISTRIBUTION, INC.,**         **WES-CO INC; Z-SQUARE; GRUPO**
   **THIRD COAST INC.,**                   **FLOR CORP;**
25  **LEGAL ONE REALTY,**                  **Ari Levy;**
   **BAY PROPERTY GROUP,**                 **Matt Estep; Benjamin Kovler,**
26 **SRG ENZO I LLC., SRG ENZO II LLC.,**   **and all GTI Entities;**
   **TIDEWATER TRANSPORTER INC.,**         **Marco Zivanovic**
27  **Z-SQUARE PROPERTIES CO. ,**
   **WES-CO INDUSTRIES,**                  **Honorable Magistrate Judge**
28  **SRG 414 LESSER LLC.,**
   **SILVERSTEIN REALTY GROUP LLC.,**          **KANDIS A. WESTMORE**
   **SRG MANAGER LLC., THREE NYMPHS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUNSHINE PRODUCE, EMF WEST INC.,**
**BIG SHOULDERS WEST,**
**OAKLAND MANAGER LLC.,**
**KEYPOINT CREDIT UNION,**
**TD SERVICE COMPANY OF ARIZONA,**
**OAKLAND 1852, 710 COMBINATOR CO.,**
**TOP SHELF MEDICINALS,**
**CYPRESS MANUFACTURING CO.**
**EFFINGHAM MEDICINAL FARMS LLC.,**
**HAYDEN MANAGER LLC.,**
**DIVERSIFIED STORAGE SOLUTIONS,**
**GRUPO FLOR CORPORATION.,**
**GRUPO FLOR CULTIVATIONS, LLC.,**
**GRUPO FLOR DISPENSARIES, LLC.,**
**GRUPO FLOR OPERATIONS, LLC.,**
**GRUPO FLOR  LLC.,**
**INDUS HOLDING COMPANY,**
**JESSIE STREET COLLECTIVE, LLC.,**
**and DOES 1 through 20, INCLUSIVE,**

**Defendants.**

# COMPLAINT

Plaintiff Kevin Quillinan files this suit to vindicate the federal laws prohibiting the cultivation and sale of recreational and/or medicinal marijuana and his rights under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff and his wife are small business persons that suffered injury to their business and property caused by the operations of defendants in the warehouse where plaintiff had stored his business and personal property, when defendants began a course of conduct designed to empty the warehouse of all existing tenants in order to substantially increase an already existing marijuana growing operation in the warehouse, begun by defendants Dennis Thompson and Zivorad Zivanovic.

Defendants identified in the caption of this complaint, and all other yet to be discovered DOES defendants, conspired each with the other to further the collective efforts of all defendants to commence large-scale cultivation and distribution of marijuana and cannabis infused food products in both California and Illinois. Defendants beginning on or about sometime in 2012-13,  initiated a long term far reaching conspiracy to cultivate marijuana from a cultivation facility in Edgewood Illinois and  the warehouse located at 414 Lesser Street in Oakland California, (hereafter  "warehouse" or " Oakland

warehouse"), and to distribute marijuana and cannabis infused food products and cannabis distillations of various types, from the distribution facility named the Clinic Effingham, located at 1011 Ford Avenue in Effingham Illinois, and the Oakland warehouse.  Several of the defendants are also either indirect or direct investors and/or partners in several other ongoing illegal cannabis cultivation and/or distribution facilities in Illinois, too numerous to mention in this complaint prior to discovery. Plaintiff alleges on belief that it is all defendants' collective intent to conspire to establish far reaching interstate enterprises for the sole purpose of cultivation and distribution of illegal cannabis products nationwide, with such products currently being provided by their illegal cultivation facilities located in California and Illinois. To achieve the aims of the conspiracy, plaintiff alleges that defendants seek to purchase and develop land and/or buildings as cultivation and/or distribution facilities that are located within a few thousand feet, or within 1,000 feet of major interstate highways and/or truck loading and offloading facilities and/or truck stops.

RICO requires those who engage in racketeering activity-including the commercial production and sale of recreational and/or medicinal marijuana to pay their victims treble damages, costs, and attorneys' fees. Under RICO, SRG and those who conspired with SRG to violate the federal marijuana laws are jointly and severally liable for plaintiff's injuries.

***Plaintiff also especially seeks an injunction under 18 U.S.C. § 1964 (a) ORDERING that:***

1.   All defendant business entities and individual defendants CEASE and DESIST from cultivating and/or distributing illegal marijuana and/or cannabis derived/infused products;

2.   All  DOES natural person defendants  CEASE and DESIST from illegally cultivating and/or distributing marijuana;

3.   All  named and DOES financial institution defendants CEASE and DESIST providing funds, loans, investment capital, and/or from opening and/or maintaining  accounts of any type for any defendants, that have gained/obtained/profited from and/or invested in,  any marijuana cultivation and/or distribution operation(s), enterprise(s), in violation of the Controlled Substances Act.

Plaintiff requests a jury trial in this matter.

WHEREFORE, Plaintiff requests relief as more fully set forth below.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

# I.

# INTRODUCTION

1.      It is a firmly established bedrock principle of the United States Constitution that federal law is the supreme law of the land. State laws that are flatly inconsistent with constitutionally authorized federal law have no force or effect. On the issue of recreational and/or medical marijuana, federal law is clear: it is a felony under the controlled substances act of 1970 (hereafter "CSA") to deal in marijuana. Despite the express federal prohibition on marijuana, California and many of its local jurisdictions have enacted laws, ordinances, and regulations designed to promote the growth of a billion dollar commercial marijuana industry.

2.      However, notwithstanding that recreational marijuana is now "legal" in California, the drug's cultivation, sale, and possession remain serious federal offenses in California, just as they are everywhere else in the United States. Indeed, those associated with California's largest-scale marijuana producers risk being sent to federal prison for the rest of their lives. The people of California are free to advocate for a change in this federal prohibition, but they must do so through their elected representatives in Congress. Under our federal system, Congress alone can authorize revision of federal laws prohibiting the commercial trade in recreational and/or medicinal marijuana.

3.      Of course, in recent years the United States Department of Justice (DOJ) has largely declined to bring prosecutions under the federal marijuana laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into California's commercial marijuana industry. But the DOJ's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of the judicially-enforceable rights under federal law. The DOJ can no more amend a federal statute than can the State of California, and marijuana remains just as illegal under federal law today as it was when Congress passed the CSA in 1970.

4.      Marijuana businesses make bad neighbors. They drive away legitimate businesses, as literally happened in this instant case, businesses' customers, emit pungent foul odors causing many to suffer allergic reactions, such as complainant's wife  Cyporette Quillinan, who suffers an allergic reaction causing her bronchial tubes to constrict any time she smells marijuana smoke.

5.      Marijuana businesses attract undesirable visitors, increase criminal activity, increase traffic, and reduce property values.

6.      Plaintiff Kevin Quillinan suffered a serious disfiguring injury at the age of fifteen as a result of being hit head on by a drunk and/or "high" driver, almost died at the scene from loss of blood because of the location of the accident and the time it took for rescue to arrive, and because of that life changing accident, is devoted to reducing the amount of drivers that will end up driving while "high" on marijuana. Plaintiff abhors the hypocrisy of those engaged in selling "medicinal marijuana" to members of the general public, which actually in fact, amounts to illegal drug dealing under the Controlled Substances Act (hereafter "CSA").

7.      Plaintiff alleges on information that at least 65 percent of the marijuana distributed by "legal" marijuana distributors ends up being smoked and/or ingested by persons that have no medical reason to smoke or ingest marijuana. The entire medical marijuana program allows unscrupulous persons, including, financiers, investors, banks, and in this case high profile attorneys, and those associated with those persons, to engage in selling marijuana to members of the general public under the disingenuous guise of providing "medicine". To date, in our sister state Colorado that legalized "medical" marijuana, at least one child age three years has died from ingesting cannabis laced food product attractively packaged, and one Colorado man, leaving his children motherless, is facing murder charges after jumping in and out of the family home's windows, then fatally shooting his wife after ingesting food products containing high amounts of THC (tetrahydrocannabinol) one of the psychotropic compounds found in cannabis.

8.      The list of unfortunate occurrences involving minor children ingesting cannabis-infused food product, hospital visits for teenagers suffering from overdoses, motor vehicular accidents, increases monthly nationwide as evidenced by internet news sources, all due to various states misguided legalization of "medical" marijuana.

9.      A perusal of the internet marijuana web sites devoted to providing and/or selling products, equipment and marijuana itself in various forms, hypocritically labeled as "medical cannabis", read like Disneyland versions of the marijuana smoker's wildest dreams come true.   One can also read

First Amended Complaint-Civil RICO

18 U.S.C. 1961

on the internet the recurring theme among those who choose to violate the CSA by cultivating and distributing "medical" and/or recreational marijuana, that proceeds from the sales thereof, will go to fund educational programs, including programs to educate children about the dangers of drug use....

10.     Such hypocritical tactics are akin to holding a carrot on a stick in front of the donkey, as if tying violations of the CSA as a means of providing funding to educate our children about the dangers of using drugs, somehow makes the idea palatable.

11.     Along with plaintiff, approximately thirty other law abiding businesses that used the warehouse as storage and/or a location to sell their products online, also had to remove from the warehouse on one months' notice. Plaintiff is aware of at least one business owner that was forced to move out of state to Des Moines Iowa, for inability to locate alternative affordable storage in the bay area.

12.     Plaintiff and plaintiff's wife (hereafter, "Kevin and Cyporette") suffered damages to their personal and business property when defendants took over the warehouse and caused all the tenants, plaintiff  included, to vacate their respective storage/business units.

13.     Because of the lack of alternative affordable space to relocate to, Kevin And Cyporette were forced to either sell at substantially deep discounts, give away, or just dispose of several thousand dollars of antiques, bric-a-brak, books, and other items of business and/or  personal property.

14.     Additionally, Kevin and Cyporette continue to incur higher costs for not only storage, but also for gas, travel time, and bridge tolls due to the location of their alternative storage facilities. Kevin and Cyporette are unable to access their stored business and personal property in a meaningful way in order to be able to function and sell as they had in the past while plaintiff's business and personal property was stored at the warehouse, on account of having had to move their business and personal property into a 40 foot steel shipping container having no light, no water, no bathroom, no internet access, and limited hourly access.

15.     As the result of ongoing illegal marijuana growing operation within the warehouse during plaintiff's tenancy therein, and repeated break-ins to the warehouse, plaintiff alleges on information and belief that items of personal and/or business property were actually stolen from their storage unit by either the thieves, and /or DOES defendants as yet unidentified.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

16.     Accordingly, plaintiff brings this suit to vindicate his federal rights under RICO, 18 U.S.C. §§ 1961 et seq., and the CSA, 21 U.S.C. §§ 801 et seq.

17.     Dealing in marijuana is racketeering activity under RICO, and those who engage in a pattern of racketeering activity through a corporation or other enterprise are liable for three times the economic harm they cause plus costs and attorneys' fees. Those who conspire with racketeers by agreeing to assist them are likewise liable. RICO also gives federal courts the power to order racketeering enterprises and their co-conspirators to cease their unlawful operations.

18.     Accordingly, plaintiff respectfully asks this Court to award it the damages, costs, and fees to which he is entitled, and plaintiff requests that the Court order the defendants to cease their open and notorious violation(s) of federal law. Furthermore, the CSA preempts the practice of state and local officials in California from issuing licenses to operate recreational marijuana businesses. Those licenses not only purport to authorize but also affirmatively assist the criminal conduct of those who receive them by making it easier for the license holder to attract investors and customers. Medicinal and/or recreational marijuana business licensing directly conflicts with and poses a major obstacle to federal law's goal of reducing marijuana trafficking and possession through an almost total prohibition on the drug's cultivation and distribution.

19.     Accordingly, if in the event plaintiff discovers the involvement of any state and/or local government actors that have issued any licenses to said unlawful marijuana growing operation(s), plaintiff reserves the right to name such state actors as defendants in this action, for the sole purpose that the Court preserve its jurisdiction over said state and/or local government actors, and order any and all state and/or local government defendant/actors to withdraw any and all licenses issued to defendant(s) that purport to allow defendant to lawfully grow and/or distribute marijuana, and to furthermore cease and desist from issuing any further "licenses" and/or  "permits" in the future, that purport to allow the "legal" growing and or distributing of marijuana.

## II.
## JURISDICTION and VENUE

First Amended Complaint-Civil RICO

18 U.S.C. 1961

20.     This Court has subject matter jurisdiction over plaintiff's RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

21.     Venue is proper in this Court under 28 U.S.C § 1391(b) and 18 U.S.C. § 1965(a)&(b), because defendants reside and/or transact their affairs in California and a substantial portion of the events giving rise to the damages complained of herein occurred in California. Defendants also transact their illegal marijuana cultivation and/or distribution operation(s) in the state of Illinois.

**III.**

**PARTIES**

22.     Kevin Quillinan is a concerned citizen who at the age of fifteen, suffered a devastating and disfiguring right leg injury resulting from being hit head on by a drunk, and/or "stoned" driver. Plaintiff Kevin Quillinan believes that if marijuana is made lawful by the Federal Government, that the amount of serious accidents caused by "stoned" drivers will increase, with the costs of such accidents to society, and to the persons injured,  far outweighing any possible "tax derived benefits". Plaintiff Kevin Quillinan because of his disabling injuries suffered, and the cause of those injuries being a drunk and/or stoned driver, is interested in law enforcement issues, particularly the enforcement of federal laws prohibiting the cultivation, distribution, and possession of marijuana.  Cyporette Quillinan is a concerned citizen physically affected by marijuana smoke, and is interested in non-smokers' rights to clean air and a clean environment. Kevin and Cyporette stress the importance that injunctive relief will provide substantial benefit to plaintiff and the public at large, especially the elderly, teenagers, and those citizens to young to realize that not all packages that are wrapped like candy, are in fact candy.

23.     Defendant RICHARD SILVERSTEIN, a resident of the state of Illinois, is one of the King Pins of the conspiracy and engages in the illicit marijuana business as either an owner and/or manager of the following several corporate or business entities thus far discovered: SRG 414 LESSER LLC; OAKLAND MANAGER LLC.; BEEHIVE DISTRIBUTION INC., SRG MANAGER LLC., HAYDEN MANAGER LLC, TIDEWATER TRANSPORT INC., BRIGHT SIDE INC., BIG SHOULDERS WEST, SUNSHINE PRODUCE, THIRD COAST INC;

23(a). Defendants DOES 1 is Evan Zane; DOES 2 is Corina Aguilar;  DOES 3  constructed the Edgewood Illinois Cultivation Facility and DOES 4 worked on utilities in the Oakland warehouse.

EFFINGHAM MEDICINAL FARMS LLC, EMF WEST INC., THREE NYMPHS, SILVERSTEIN REALTY GROUP LLC., SRG ENZO I and SRG ENZO II, all with their principal offices at 540 Frontage Rd., Suite 3145 Northfield Illinois 60093, and/or 311Aberdeen Street 3rd Floor Chicago Illinois 60607, and/or 312 N. May Street Chicago Illinois 60093, and defendant Richard Silverstein also does business as OAKLAND 1852 with its principal office at 1265 De Haro St. # 2 San Francisco CA. 94107. Throughout this complaint, Richard Silverstein and/or SRG or SRG 414, is synonymous with all the above delineated corporate and/or business entities according to context.

24.    Defendants  Robert Weakley, Gavin Kogan, Paul Henderson, Mark Ainsworth  dba Cypress Manufacturing Company and/or Indus Holding Company,  (hereafter collectively, "CYPRESS") are located  in Salinas California at 20 Quail Run Circle Unit B, Salinas, California. CYPRESS is a manufacturing facility that markets and distributes cannabis concentrate infused chocolates under the brand name "**ALTAI**", infusing their chocolates with cannabis concentrates of varying qualities and quantities, in order to supply the medical and recreational edible cannabis products market in California, and plaintiff alleges on belief, other states as well. Large batches of cannabis-infused chocolates are distributed to dispensaries throughout California and other states. CYPRESS uses funds, and possesses equipment, chemicals, and product, that have moved in interstate commerce, and has supplied SRG, Z SQUARE, and EMF WEST with cannabis products to the Oakland warehouse and as alleged on belief, to other illegal cannabis dispensaries nationwide.

25.    When defendant CYPRESS agreed with Richard Silverstein and Zivorad Zivanovic to supply cannabis infused chocolate products to the warehouse,  defendant CYPRESS  had full knowledge that those products would be used to further the efforts of Richard Silverstein  and Zivorad  Zivanovic to commit felonies in the warehouse  by using the warehouse to distribute manufactured  cannabis infused food products, and by supplying those products, defendant CYPRESS conspired with defendants Richard Silverstein and Zivorad Zivanovic to commit crimes under the CSA, in violation o of 21 U.S.C. § 846, which is a violation of 18 U.S.C. § 1961(1)(D).

26.    Defendant CYPRESS currently owns and/or maintains a location at 20 Quail Run Circle Unit B, Salinas California, the equipment, materials, supplies, all to support and in furtherance of Cypress's edible cannabis chocolates  manufacture and distribution operations in Salinas, which is

a felony under the CSA, and is a violation of 21 U.S.C. §§ 843(a)(6) and 843(a)(7).

27.     Defendant Robert Weakley, Gavin Kogan, Paul Henderson, and Mark Ainsworth (collectively, "CYPRESS") use the internet, telephone, mail, email, and other communication facilities to contract to supply cannabis infused chocolates with outside distribution locations throughout the state, including to the warehouse, and on belief, throughout other states, which is a violation of 21 U.S.C. 843(b), which is racketeering activity under 18 U.S.C. 1961(1)(D).

28.     By knowingly leasing and/or maintaining,  managing or controlling a place where cannabis products are manufactured, defendant CYPRESS violated 21 U.S.C. § 856, which is racketeering activity under 18 U.S.C. 1961(1)(D).

29.     Defendant Russell Ainsworth, a resident of the state of Illinois, does business in the state of California as president of BIG SHOULDERS WEST and can be found at 311 N. Aberdeen St. Chicago Illinois 60607. Defendant Russell Ainsworth is associated and/or employed by defendant Jon Loevy and is associated with defendants Michael Kanovitz and Richard Silverstein, and collaborates with each of the defendants above to further the illicit marijuana growing and distribution operations.

30.     Defendant Russell Ainsworth is alleged on belief to be one of the King Pins of the illegal marijuana cultivating and/or distributing enterprise(s), and to achieve those ends, provided funds to support and maintain the illegal enterprise, and conspired with each of the other defendants to achieve their illegal goal of setting up the large scale marijuana cultivation and distribution operation in the Oakland warehouse.

31.     Defendant Russell Ainsworth as President of BIG SHOULDERS WEST, signed one of seven fraudulent three year leases, to be subrogated to defendant KEYPOINT as security for a loan to defendant SRG 414 in the amount of 2.1 million dollars to renovate the warehouse to make the warehouse suitable for large-scale marijuana cultivation.

32.     Defendant Russell Ainsworth had full knowledge when he provided investment  funds to Richard Silverstein, and Zivorad Zivanovic, to either lease, purchase, renovate or maintain illegal marijuana cultivation facilities, that those facilities would be used to cultivate and/or distribute marijuana, and intended to further the efforts of the other defendants to commit crimes under the CSA, thus defendant  Russell Ainsworth conspired to commit crimes under the CSA, which is a violation

of 21 U.S.C. 846, which is racketeering activity under 18 U.S.C. 1961(1)(D).

33.     Plaintiff alleges on information and belief that defendant Russell Ainsworth used the telephone, mail, email, and other communication facilities to make agreements and arrangements with the other defendants, intended to benefit the wrongful conspiracy. The criminal use of such communication facilities violates 21 U.S.C. § 843(b), which is racketeering under 18 U.S.C. § 1961(1)(D).

34.     Defendant Abigail Bornstein is alleged on belief to be a Queen Pin of the conspiracy, and is the Director of Operations at BAY PROPERTY GROUP in Oakland California. Plaintiff alleges on belief that defendant Abigail Bornstein through her thorough knowledge of Bay Area Commercial and Industrial property, and working in the capacity of director of operations for BAY PROPERTY GROUP, located the warehouse, then facilitated the purported straw man purchase of the warehouse by defendant Richard Silverstein, dba SRG.  Plaintiff  alleges on belief that defendant Abigail Bornstein had full knowledge  that when she facilitated the purchase of the warehouse, that the seller Zivorad Zivanovic dba Z SQUARE was going to remain in the warehouse and continue to participate in the criminal conspiracy to violate the CSA, and defendant also had full knowledge that straw man purchaser SRG 414 / Richard Silverstein, and defendant Zivorad Zivanovic were also going to renovate the warehouse to accommodate large scale marijuana growing and/or distribution, in violation of the CSA, thus, defendant Abigail Bornstein was aware the warehouse was going to be used for an ongoing criminal enterprise in violation of the CSA, and had full knowledge that to locate and arrange the purchase of the warehouse would further the efforts of Richard Silverstein and Zivorad Zivanovic to commit felonies under the CSA. Thus defendant Abigail Bornstein conspired with SRG and Z SQUARE to commit felonies under the CSA, in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

35.     Plaintiff alleges on belief that defendant Abigail Bornstein also provided funds to further the efforts of SRG, Z SQUARE, and EMF WEST to purchase and or renovate the Oakland warehouse in order to make the warehouse ready for large-scale marijuana cultivation and/or distribution.

36.     Plaintiff alleges on belief that when defendant Abigail Bornstein facilitated the purchase of the warehouse by King Pin defendant Richard Silverstein, defendant Abigail Bornstein had full

First Amended Complaint-Civil RICO

18 U.S.C. 1961

knowledge that the funds used by defendant Richard Silverstein were derived from the illegal cultivation and/or  distribution of marijuana in the state of Illinois, and thus knowingly facilitated a financial transaction involving funds derived from manufacturing and selling marijuana, which is a crime under 18 U.S.C. §§§ 1956, 1957, 1960.

37.     Plaintiff alleges on belief that defendant Abigail Bornstein used the telephone, email, mail, and other communication facilities negotiate the purchase of the warehouse by King Pin Richard Silverstein/SRG and to arrange financing for the purchase and/or renovation of the warehouse. The criminal use of such communication facilities is a felony under the CSA and is a violation of 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

38.     Defendant WES-CO INDUSTRIES., is a California corporation owned in part by defendant Zivorad Zivanovic, who works at WES-CO as a designer and engineer of industrial ventilation and filtration systems.  Defendant WES-CO  as a company that provides industrial ventilation and filtration systems, is perfectly positioned to design, construct and install ventilation systems for large scale marijuana cultivation operations, and plaintiff alleges on belief, that WES-CO designs fabricates and installs ventilation systems for large scale marijuana cultivation facilities located in California, Illinois and possibly in addition to other states. Defendant WES-CO uses funds, products and materials that have all moved in interstate commerce.

39.     Defendant Daniel Cheung is an eviction specialist attorney employed in the law offices of BornsteinLaw. Defendant  Daniel Cheung agreed to fund and/or provide eviction expertise and/or prepared fraudulent statements in order to obtain a TRO against plaintiff, having at that time, full knowledge  that the warehouse was going to be used to grow marijuana, and that defendants SRG and EMF WEST were going to use the warehouse to increase the growing capacity therein, and defendant Daniel Cheung by providing financial assistance and/or eviction expertise intended to further those efforts of SRG and EMF WEST to commit felonies under the CSA which is a violation of  21 U.S.C. §846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

40.     Defendant Daniel Cheung in preparing those statements described above, did so with the knowledge that the TRO would prevent any further evidence gathering by Kevin, and that marijuana was being grown in the warehouse at the same time that Kevin was photo-documenting the events

occurring therein. By virtue of said acts alleged above, Defendant Cheung thereby revealed himself to be a co-conspirator with SRG 414 and EMF to illegally cultivate and/or distribute marijuana from the Oakland Warehouse.

41.     Plaintiff alleges on belief that defendant Daniel Cheung is an investor in the unlawful marijuana growing conspiracy, has full knowledge of Z SQUARE and SRG 414's ongoing illegal drug enterprise and intended to further those efforts by investing in said drug enterprise, and preventing plaintiff from gathering evidence by obtaining a TRO against plaintiff.

42.     In agreeing to knowingly prepare fraudulent statements as described above to obtain the TRO and thus to prevent plaintiff from photo-documenting the warehouse and gathering evidence of the unlawful activity therein, and by agreeing to invest in the illegal enterprise, defendant Daniel Cheung intended to further SRG 414 and Z SQUARE'S criminal activities, and thereby conspired with SRG 414 and Z SQUARE to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C.§ 1961(1)(D). Defendant Daniel Cheung used email, telephone, mail, and other communication facilities to effectuate providing monies to fund the enterprise to cultivate marijuana in the warehouse.  The criminal use of such communication facilities is a violation of 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

43.      Defendant Daniel Bornstein, is a resident of the state of California, and does business under the corporate name of LEGAL ONE REALTY Cal. Corp. File # 2758233, and the fictitious business names of BAY PROPERTY GROUP; BORNSTEIN LAW, (hereafter collectively "LEGAL ONE") with his principal place of business at 482 W. Macarthur Blvd. Oakland CA. 94609. Defendant Daniel Bornstein is alleged on belief to be one of the "King Pins" of the illegal enterprise, in that plaintiff  believes that defendant Daniel Bornstein "arranged" the straw man sale of the warehouse to defendant Richard Silverstein; provided funds for the purchase of the warehouse; assisted defendant Richard Silverstein to arrange the leaseholds to subordinate  to defendant KEYPOINT for security on the 2.1 million dollar loan in order to gain financing to renovate the warehouse; to vacate the warehouse of all existing tenants in order to renovate the same.

44.     Defendant Daniel Bornstein also filed a wrongful eviction action against plaintiff, as plaintiff was already halfway through the process of removing from the warehouse, representing then

plaintiff SRG 414 in the eviction action.  shortly after filing the eviction action against plaintiff, Defendant Daniel Bornstein filed for and obtained a TRO against plaintiff, all done  with the intent  to cause plaintiff duress and emotional distress while removing from the warehouse, and to prevent plaintiff from any further photo-documenting the criminal activities within the warehouse. By virtue of filing said eviction action and TRO without cause, defendant Daniel Bornstein revealed himself to be a principal co-conspirator with SRG 414 to further all defendants' conspiracy to commit violations under the CSA.

45.     By virtue of said acts by Defendant Daniel Bornstein described above, and because Daniel Bornstein had full knowledge that the warehouse would be used to grow and distribute marijuana, and intended by his acts to further defendants' efforts to use the warehouse commit felonies under the CSA, defendant Daniel Bornstein conspired with SRG and EMF WEST to commit felonies under the CSA in violation of 21 U.S.C. §§ 846 and 856, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

46.     Plaintiff alleges on belief that defendant Daniel Bornstein provided funds and/or pooled his investment capital in the ongoing criminal enterprise that had gained monies through the ongoing criminal conspiracy to cultivate and/or distribute marijuana, in Illinois, thus Daniel Bornstein intended to further the efforts of all other defendants in continuing the drug conspiracy in California by the use of funds that have traveled in interstate commerce.  In agreeing to knowingly provide financial assistance and/or eviction assistance to SRG and EMF WEST in order to operate its marijuana business with the intent to further SRG and EMF WEST's criminal conspiracy, Daniel Bornstein  committed  felonies under the CSA in violation of 21 U.S.C. §§ 846 and 856, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

47.     Defendant Daniel Bornstein used the mail, email, telephone and other communication facilities to complete agreements to, and  file a wrongful eviction action and TRO against plaintiff, and to finance the ongoing  criminal  conspiracy to cultivate marijuana in the warehouse and in Edgewood Illinois and Effingham Illinois cultivation and distribution facilities respectively. The criminal use of communication facilities is a violation of 21 U.S.C.  § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

48.     Plaintiff alleges on information and belief that defendant Daniel Fineman is a resident of either Illinois or California, and is the manager of OAKLAND MANAGER LLC., and Chief Operating Officer of EFFINGHAM MEDICINAL FARMS LLC/JUSTICE GROWN, and has operational capacities and authority in both California and Illinois to develop and/or cause to be designed and constructed, illegal marijuana growing facilities.

49.     Defendant Daniel Fineman knew when he acted as Chief Operating Officer of Effingham Medicinal Farms/ Justice Grown, that it was the intent of Effingham Medicinal Farms to cultivate and distribute marijuana and cannabis based products, and by operating in such capacity, defendant Daniel Fineman intended to further those efforts of Effingham Medicinal Farms and SRG 414 to commit felonies under the CSA, thus defendant Daniel Fineman conspired with Effingham Medicinal Farms and SRG 414 to commit felonies under the CSA.

50.     Defendant Daniel Fineman also acted as authorized manager of OAKLAND MANAGER LLC., by collecting rents from then existing storage tenants in the warehouse, this plaintiff included, and acted as SRG 414's authorized representative at the Quillinan eviction.

51.     When defendant Daniel Fineman agreed to be COE of EFM and manager of OAKLAND MANAGER LLC., defendant had full knowledge of the broader conspiracy to use the warehouse to commit felonies in violation of the CSA, and intended to further the conspiracy, thus Defendant Daniel Fineman conspired with SRG, Z SQUARE, EMF WEST to commit felonies under the CSA, which is a violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

52.     Defendant Daniel Fineman used the mail, email, telephone and other communication facilities to unlawfully collect rents from plaintiff, and to effectuate the day to day management of OAKLAND MANAGER LLC., and/or EFM. The criminal use of such communication facilities violates 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. 1961(1)(D).

53.     Defendant Tyler Forman is a resident of the state of California and is employed by Defendant WES-CO in an as yet undetermined capacity. Defendant Tyler Forman knew to a certainty that, when Zivorad Zivanovic as owner and/or manager of WES-CO and SRG 414 entered into an agreement for the purchase of the building by SRG 414, that SRG 414 intended to renovate the warehouse to accommodate large-scale marijuana growth, and thus was aware of the purpose of

those renovations and the broader SRG 414 / Z SQUARE/WES-CO marijuana drug conspiracy. By agreeing and conspiring with SRG and Z SQUARE/WES-CO, to facilitate violations of the CSA, defendant Tyler Forman violated 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

54.     Defendant Tyler Forman used email, mail, telephone, and other communication facilities to effectuate his part in the broader criminal conspiracy to commit felonies under the CSA. The criminal use of such communication facilities violates 21 U.S.C. § 843(b), and is racketeering activity under 18 U.S.C § 1961(1)(D).

55.     Defendant Tyler Forman  purportedly working as an employee of WES-CO and/or Z SQUARE, signed under penalty of perjury one of the four patently false statements  prepared by defendant Daniel Cheung and/or  defendant Daniel Bornstein for the purpose of obtaining a TRO against plaintiff Kevin Quillinan which was done to prevent plaintiff from further photo- documenting the events occurring in and around the warehouse during the months of May/June of 2016, and the fact that the warehouse had been entirely vacated of all tenants.

56.     Plaintiff alleges on information and belief that defendant Joel Feldman is a resident of the state of Illinois, an attorney at the law offices of Loevy and Loevy, and  purports to do business in California as the authorized corporate representative of THIRD COAST INC; as president of TIDEWATER TRANSPORTER INC; as agent for SRG MANAGER LLC; OAKLAND MANAGER LLC., and EFFINGHAM MEDICINAL FARMS LLC.  Plaintiff alleges on belief that defendant Joel Feldman, also a King Pin and investor in the conspiracy, provided funds to renovate the warehouse.

57.     Defendant Joel Feldman as an authorized representative of THIRD COAST INC., and as president of TIDEWATER TRANSPORTER INC., signed 2 of 7 nonexistent warehouse leaseholds which were subrogated and attorned to defendant KEYPOINT as security for the loan of 2.1 million to SRG to renovate the warehouse to make it suitable for a large-scale marijuana growing and distribution operation. Defendant Joel Feldman had full knowledge when he signed leases to be subordinated to defendant KEYPOINT as security for the loan to SRG 414, and when defendant provided funds to SRG 414 and EMF WEST, that defendants would use the proceeds of that loan and the funds defendant Joel Feldman provided, to renovate the warehouse to accommodate large scale marijuana cultivation and

distribution.

58.     Defendant Joel Feldman as an authorized representative of THIRD COAST INC., and as president of TIDEWATER TRANSPORTER INC., signed 2 of 7 fraudulent leases for spaces in the warehouse which were subrogated to defendant KEYPOINT as security for the loan of 2.1 million to SRG to renovate the warehouse to make it suitable for a large-scale marijuana cultivation.  Defendant Joel Feldman had full knowledge when he signed such a fraudulent lease(s) to be subordinated to defendant KEYPOINT as security for the loan to SRG 414, that the leases were in fact fraudulent, and drafted and filed with  the County of Alameda for the sole purpose and intent to submit to defendant KEYPOINT as security for the loan from defendant  KEYPOINT, and  that  defendants would use the proceeds of that loan and the  additional funds defendant Joel Feldman provided, to renovate the warehouse to accommodate large scale marijuana growing and distributing.

59.     When Defendant Joel Feldman signed said fraudulent lease(s) and/or provided additional funds to defendants SRG/Z SQUARE and EMF WEST, defendant was fully aware of the purpose of  the warehouse renovations and the broader SRG, Z SQUARE and EMF's efforts to commit felonies under the CSA and intended to further those efforts.

60.     By agreeing to sign fraudulent lease(s) and/or provide additional funds to the conspiracy, defendant Joel Feldman conspired with SRG 414, Z SQUARE and EMF to commit felonies under the CSA which is a violation of  21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).  At all times relative to this complaint, Defendant Joel Feldman knew that funds provided by other defendants were acquired by the illegal cultivation and distribution of marijuana.  By agreeing to pool his funds with the other conspirators, defendant Joel Feldman committed crimes under the CSA, which are violations of 18 U.S.C. §§§ 1956, 1957, 1960, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

61.     Plaintiff alleges on information and belief that defendant Joel Feldman used telephone, email, mail, and/or other communication facilities to complete and/or submit the fraudulent lease(s) referred to herein, and to complete agreements with the other defendants to provide funding for the illegal marijuana growing and distribution enterprise, all to further SRG,  Z SQUARE, and EMF's marijuana drug conspiracy. In using such communication facilities to complete, facilitate, or maintain

criminal activities in violation of the CSA, defendant Joel Feldman violated 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

62.     Plaintiff alleges on belief that defendant Bruce Goldstone is a resident of the state of Illinois and purports to do business as Beehive Distributor and/or acted as an agent of Beehive Distributor by signing 1 of 7 fraudulent leases that were subordinated to defendant KEYPOINT, and acts as Chief Financial Officer of defendant SILVERSTEIN REALTY GROUP LLC. When defendant Bruce Goldstone signed fraudulent lease(s) that were subordinated to KEYPOINT as security for the loan from KEYPOINT to SRG 414, defendant Bruce Goldstone had full knowledge  that defendant SRG 414 and defendant Z SQUARE would use the proceeds of the loan to renovate the warehouse  in order to accommodate large-scale marijuana growing and distribution, thus defendant Bruce Goldstone was aware of the purpose of the loan and renovations to the warehouse, and the broader SRG 414, Z SQUARE, and  EMF WEST's marijuana drug conspiracy and intended by signing said lease, and by acting as an agent of Beehive Distributor, to further defendants efforts to set up large scale marijuana cultivation
and/or distribution in the Oakland warehouse.

63.     By agreeing to further defendant SRG, Z SQUARE, and EMF WEST's efforts to commit felonies under the CSA, defendant Bruce Goldstone thus conspired with SRG,  Z SQUARE and EMF WEST  to commit crimes under the CSA which is a  violation of  21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

64.     Defendant Bruce Goldstone used the telephone, email, mail, or other communication facilities to complete and/or submit the fraudulent lease(s) referred to herein, and to execute his purported duties while acting as agent of Beehive Distribution. The criminal use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

65.     Plaintiff alleges on belief that defendant Andrew Thayer is a resident of the state of Illinois and purports to do business in California as president of BRIGHT SIDE INC.  Defendant Andrew Thayer executed 1 of 7 fraudulent  warehouse leases to be subrogated and attorned to defendant KEYPOINT for security of the loan of 2.1 million dollars to defendant SRG, so that SRG could renovate the warehouse to make it more suitable for large-scale marijuana growing and distributing operations,

1  thus defendant knew when signing the lease, the purpose of the loan and of the renovations to the

2  warehouse and the broader SRG 414 / Z SQUARE marijuana drug conspiracy.

3       66.     By agreeing and conspiring with SRG 414 and Z SQUARE to facilitate violations of the

4  CSA, defendant Andrew Thayer violated 21 U.S.C. § 846, which is racketeering activity under 18

5  U.S.C. § 1961(1)(D).  Defendant used the telephone, email, mail, and other communication facilities to

6  complete and/or submit the lease(s) referred to herein. Such use of communication facilities violates 21

7  U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

8  67.   Defendant Deidra Mae Harper is acting Secretary and Treasurer for BEEHIVE DISTRIBUTION,

9  and signed 1 of 7 fraudulent warehouse leases that were subrogated and attorned to defendant

10  KEYPOINT as security for the loan of 2.1 million to defendant SRG, so that SRG could renovate the

11  warehouse to make it suitable for a large-scale marijuana growing and distributing operation.

12       68.     Defendant Deidra Mae Harper had full knowledge that the lease she signed would be

13  used as security on the loan to SRG, and that SRG, Z SQUARE, and EMF WEST would use the loan

14  funds to renovate the warehouse to further the illegal conspiracy to cultivate and distribute marijuana.

15  By agreeing to act as secretary and treasurer of BEEHIVE DISTRIBUTION and thereby further the

16  criminal activities of SRG, Z SQUARE and EMF WEST, defendant Deidra Mae Harper conspired with

17  defendants SRG, Z SQUARE, and EMF WEST to commit felonies under the CSA in violation of 21

18  U.S.C. § 846, which is racketeering activity under 18 U.S.C. 1961(1)(D).

19       69.     Plaintiff  alleges  on information and belief that Illinois resident and prominent Civil

20  Rights attorney defendant Jon Loevy is one of the King Pins in the  alleged conspiracy and illegal

21  enterprise, along with  defendants Michael Kanovitz, and Richard Silverstein. Defendant Jon Loevy acts

22  as either owner and/or manager and/or investor in and of EFFINGHAM MEDICINAL FARMS LLC.,

23  and EMF WEST, and alleged on belief, provided funds to defendant straw buyer Richard Silverstein to

24  purchase and/or renovate the warehouse in Oakland to further augment and increase marijuana

25  cultivation  and distribution capacity therein; to purchase the land and construct the building for the

26  marijuana cultivation operation in Edgewood Illinois; in addition to providing funds, financial backing

27       70.     and/or active management for the establishment of a marijuana dispensary in the town of

28  Effingham Illinois by name of Clinic Effingham.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

71.     Plaintiff alleges on belief that the alleged far reaching conspiracy takes place in both California and Illinois, with the conspirator's intent to illegally distribute marijuana intrastate in both California and Illinois, as well as interstate to any and all states in between, and from California and Illinois to the East Coast of the United States.

72.     Defendant Gospa Lucik is a Serbian National of unknown status residing in California and is employed in the warehouse by defendants and Zivorad Zivanovic dba Z Square Properties Company LLC, and WES-CO Industries. Defendant is a forklift driver and janitor that worked in the warehouse prior to, and during the time that plaintiff rented unit 14 storage space. Defendant Gospa Lucik made statements to plaintiff subsequent to defendant SRG 414's purchase of the property, designed to deceive plaintiff into believing that plaintiff would be able to continue to rent storage within the warehouse. Subsequent to the purported purchase of the warehouse by SRG 414, defendant Gospa Lucik  remained at the warehouse as the janitor and forklift driver and/or renovations operations manager.

73.     Defendant Gospa Lucik as a purported employee of WES-CO and/or Z SQUARE, was one of the signatories on the patently false statements prepared by defendants  Daniel Cheung and/or Daniel Bornstein to obtain a TRO against plaintiff  for the purpose of preventing plaintiff from further photo-documenting the renovations taking place in the warehouse .

74.     When Defendant Gospa Lucik signed the patently false statement described above; made statements to plaintiff designed to deceive plaintiff into continuing to pay rent instead of immediately seeking alternative storage facilities; drove forklift and maintained and/or managed renovation operations in the warehouse for WES-CO and/or Z SQUARE, defendant had full knowledge that SRG, Z SQUARE, and EMF WEST were going to vacate then renovate the warehouse to increase the size and scope of the illegal marijuana growing operation therein, thereby committing felonies under the CSA, and defendant Gospa Lucik intended to further those efforts. In agreeing to the above described actions, and to drive forklift and  maintain  the warehouse and oversee the renovations therein, defendant Gospa Lucik conspired with defendants SRG, Z SQUARE and EMF WEST to commit felonies under the CSA which is a violation of 21 U.S.C. 846, which is racketeering activity under 18 U.S.C. 1961(1)(D).

75.    Defendant Gospa Lucik used the mail, email, telephone and other communication facilities to effectuate her agreements/work duties with SRG, Z SQUARE and EMF WEST. The criminal use of such facilities violates 21 U.S.C. 843(b) and is racketeering activity under 18 U.S.C. 1961(1)(D).

76.  Plaintiff alleges on information and belief that defendant Dianne Murphy is a book keeper employed by Z Square Properties Company and/or WES-CO Industries, and that Z SQUARE  and WES-CO are front companies owned in part or in whole by Zivorad Zivanovic, operated for the express purpose of concealing the income generated for defendants  Zivorad Zivanovic, Dennis Thompson, from their former illegal storage operation, and illegal marijuana grow operation within the warehouse and that defendant Dianne Murphy aids  in this concealment by fraudulent book keeping practices, all to effectuate such concealment.

77.    By such fraudulent bookkeeping practices, defendant Dianne Murphy aids defendant Zivorad Zivanovic  in avoiding federal income taxes from the illegally derived income from the illegally operated self storage facility business formerly in the warehouse.

78.    Defendant Dianne Murphy continues to be employed by defendants Zivorad Zivanovic dba WES-CO and Z Square, and remained there as a "manager" and book keeper subsequent to the purchase of the property by SRG 414.

79.    Defendant Dianne Murphy working as the bookkeeper and/or warehouse manager for WES-CO and/or Z SQUARE, was one of the signatories on the patently false statements prepared by defendants  Daniel Cheung and/or Daniel Bornstein, prepared in anticipation of  obtaining a TRO against plaintiff  to prevent plaintiff from further photo- documenting the renovations taking place in the warehouse.

80.    When defendant Dianne Murphy agreed to sign patently false statements under penalty of perjury in anticipation of obtaining a TRO against plaintiff,  to keep fraudulent books and/or manage the day to day operations of clearing the warehouse of all then existing tenants, defendant Dianne Murphy had full knowledge that the warehouse was going to be vacated and renovated in order to begin large scale marijuana cultivation operations, thus defendant had full   knowledge of  EMF WEST, SRG, and Z SQUARE's broader conspiracy to commit felonies under the CSA, and intended to further those

efforts, thus defendant Dianne Murphy conspired to commit felonies under the CSA, which is a violation of 21 U.S.C. 846, which is racketeering activity under 18 U.S.C. 1961(1)(D).

82.   Defendant Dianne Murphy used the mail, email, telephone and other communication facilities to effectuate her agreements/work duties with SRG, Z SQUARE and EMF WEST. The criminal use of such facilities violates 21 U.S.C. 843(b) and is racketeering activity under 18 U.S.C. 1961(1)(D).

83.   Defendant Joseph Janssen is a supplier of illegal cannabis infused food products sent to the warehouse addressed to "SRG 414", via the United States Mail and/or other shipping services which make use of interstate highways, and is, or was located in the state of Washington. Defendant Joseph Janssen does, or did business as TOP SHELF MEDICINALS.  Plaintiff alleges on belief that defendant Joseph Janssen also used the mail, email, and other forms of communication facilities with the intent to further and/or maintain defendant's business relationship with SRG 414.  By providing SRG 414 with cannabis products with the intent to further SRG 414's drug crimes, Joseph Janssen conspired with SRG 414, and all those defendants alleged herein to be associated with SRG 414, to commit crimes under the CSA in violation of 21 U.S.C. § 846. That is racketeering activity under 18 U.S.C. § 1961(1)(D).

84.   Defendant Joseph Janssen used mail, email, telephone and other communication facilities to complete deliveries of defendant's cannabis products to the warehouse. The criminal   use of such communications facilities violates 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

85.   Defendant Michael Kanovitz is President of Sunshine Produce. Sunshine Produce is owned and incorporated by Defendant Richard Silverstein. Defendant Michael Kanovitz is a partner with Jon Loevy in the illegal cannabis cultivation facility located in Edgewood Illinois. Defendant Michael Kanowitz signed 1 of 7 fraudulent warehouse leases that were subordinated to defendant  KEPOINT for security on the loan of 2.1 million dollars to King Pin defendants Richard Silverstein dba SRG 414 and Jon Loevy, dba Effingham Medicinal Farms LLC., and EMF WEST,  said loan monies being used to renovate the warehouse to further the large scale marijuana cultivation and distribution therein.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

86.    Plaintiff alleges on belief that the loan monies are also being used to pay the note on the loan itself, in lieu of the 7 fraudulent leases that were subordinated to defendant KEYPOINT as security for the loan.  Defendant Michael Kanovitz is alleged on belief to be one of the King Pins of the conspiracy, providing investment funds, legal expertise, and/or his signature on fraudulent leaseholds in offer of security for loans as described above.

87.    Defendant Michael Kanovitz , had full knowledge of, and conspired with each of the other defendants to form, invest in, and maintain the long term far reaching marijuana cultivation and distribution  enterprise(s), in violation of the CSA. Thus Michael Kanowitz conspired with each of the other defendants, Daniel Bornstein, Abigail Bornstein, Daniel Cheung, Gavin Kogan, Jeffery Gilles, Jon Loevy, Richard Silverstein, Zivorad Zivanovic, Ashley Peterson, Terah Olson, Dianne Murphy, Joel Feldman, Daniel Fineman, and all those defendants associated therewith, to commit felonies under the CSA  by operating and/or maintaining facilities for the cultivation and/or distribution of marijuana and marijuana infused food products California and Illinois, thereby committing felonies under the CSA which is a violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

88.Defendant Michael Kanowitz used mail, email, telephone, and other communications facilities to subordinate the fraudulent lease(s) to defendant KEYPOINT for security on the loan as described above, and to  communicate and thereby effectuate multiple agreements to provide financing for multiple illegal marijuana cultivation and distribution facilities in both Illinois and California, all of which are crimes under the CSA, which is a violation of 21 U.S.C. 843(b), which is racketeering activity under 18 U.S.C. 1961(1)(A).

89.    Defendant Gavin Kogan is an attorney residing in Salinas California and is the registered owner of 710 COMBINATOR COMPANY, California Corporations registry number 3869648, filed 1.28.2016; INDUS HOLDINGS INC., Cal. Corp. File number 3748298, filed 1.21.2015.  Plaintiff alleges on information and/or belief, that defendant Gavin Kogan supplied SRG, EMF WEST and Z SQUARE with prepared cannabis product(s) manufactured by a facility owned and operated by defendant located in Salinas California.

90.     When defendant Gavin Kogan agreed to supply defendants SRG / EMF WEST and Z SQUARE with prepared cannabis product(s) to the warehouse, defendant had full knowledge of defendant SRG /EMF WEST and Z SQUARE'S plans to operate an ongoing illegal drug enterprise from the warehouse, and intended to further those efforts.

91.     In agreeing to knowingly provide prepared cannabis product(s) to SRG / EMG WEST and Z SQUARE with the intent to further SRG/EMF WEST AND Z SQUARE'S criminal activities, defendant Gavin Kogan conspired together with SRG / EMF WEST and Z SQUARE to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under §18 U.S.C. § 1961(1)(D). Defendant Gavin Kogan used email, mail, telephone, and other communication facilities to negotiate supplying cannabis products to SRG / EMF WEST and Z SQUARE.   The criminal use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

92.     Defendant Jeffery Gilles is an attorney who resides in or around Salinas California. Plaintiff alleges on information and belief that defendant Jeffery Gilles is associated and/or affiliated with defendant Gavin Kogan, and in some way, shape or form, formed agreements with defendant Gavin Kogan to invest in the manufacture and/or to supply defendants SRG, Z SQUARE, and EMF WEST with illegal manufactured cannabis products.

93.     Plaintiff alleges on belief that when defendant Jeffery Gilles made agreements with Gavin Kogan to manufacture and/or supply medical and/or recreational cannabis products to SRG, that defendant Jeffery Gilles had full knowledge that the products would be supplied to the warehouse, and that defendants SRG, Z SQUARE, and EMF WEST were engaged in a continuing criminal conspiracy to commit felonies under the CSA by continuing to cultivate and/or distribute marijuana and cannabis infused food products  from the warehouse.

94.     In agreeing to manufacture and/or supply illegal cannabis products to the warehouse, defendant Jeffery Gilles thereby intended to further the efforts of SRG, Z SQUARE, and EMF WEST to cultivate marijuana and/or distribute cannabis infused food products which are felonies under the CSA, thus defendant Jeffery Gilles conspired with those above listed defendants to commit felonies under the CSA, which is a violation of 21 § U.S.C. 846, which is racketeering activity

1  under 18 U.S.C. § 1961(1)(D).

2      95.    Plaintiff alleges on information and belief that defendant Jeffery Gilles used email, mail,

3  telephone, and other communication facilities to arrange manufacture and/or supply line to the

4  warehouse of illegal cannabis products. The criminal use of such communication facilities violates

5  21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1D).

6      96.    Defendant Martin Schneider dba Hometown Heart can be found at 414 Lesser Street in

7  Oakland, California, and colluded and/or conspired together with each of the other defendants to work

8  towards the common illegal goal of growing and/or distributing illegal marijuana and marijuana

9  derived concentrated and/or food products. When defendant Martin Schneider agreed to collude with

10  defendants SRG / EMF WEST and Z SQUARE, by fulfilling as yet unknown duties and or working in

11  some as yet undiscovered capacity within the warehouse, Martin Schneider knew that defendants

12   SRG / EMF WEST and Z SQUARE were engaged in an illegal drug enterprise, and intended by

13  defendant's work and or colluding with each of the other defendants, to further SRG / EMF and Z

14  SQUARE's criminal marijuana business.  In agreeing to knowingly work in the warehouse with full

15  knowledge that a criminal marijuana business was being operated therein, defendant Martin Schneider

16  conspired together with each of the other defendants to commit felonies under the CSA in violation of

17  21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D). Plaintiff alleges on

18  belief that defendant Martin Schneider used mail, email, telephone and other communication facilities

19  to complete his agreement(s) for employ and/or assistance within the warehouse. The use of such

20  facilities violates 21 U.S.C. § 843(b), and is racketeering activity under 18 U.S.C. § 1961(1)(D).

21      97.    Defendant Ashley Peterson is employed by and/or associated with defendants Jon

22  Loevy, Michael Kanowitz, Russell Ainsworth, Richard Silverstein and Zivorad Zivanovic. When

23  defendant Ashley Peterson made the decision to work with SRG / EMF / EMF WEST and Z

24  SQUARE, defendant Ashley Peterson knew that each of the other defendants were operating an illegal

25  marijuana growing and distribution business.

26      98.    In agreeing to knowingly provide professional services to  each of the other

27  defendants with the intent to further the defendants' illegal marijuana growing and distribution

28  activities, defendant Ashley Peterson conspired with each of the other  defendants to commit

First Amended Complaint-Civil RICO

18 U.S.C. 1961

felonies under the CSA in Violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

99.     Defendant Ashley Peterson is the Vice President of Effingham Medicinal Farms, and was instrumental and collaborated and/or conspired with each of the other defendants in overseeing the establishment of Clinic Effingham and the Edgewood Illinois marijuana growing and/or distributing facility(s) in the towns of Effingham and Edgewood Illinois respectively, and plaintiff alleges on belief that defendant Ashley Peterson took part in overseeing the renovation and setup of large scale marijuana cultivation in the Oakland warehouse. Plaintiff alleges on information and belief that defendant Ashley Peterson used mail, email, telephone and other communication facilities to negotiate, maintain, and/or complete her duties and obligations to each of the other defendants while acting as Vice-President of Effingham Medicinal Farms and while establishing Clinic Effingham, and the Edgewood Illinois marijuana growing facility, and overseeing the renovation of the warehouse.  The criminal use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C § 1961(1)(D).

100.     Defendants Dennis Thompson, Evan Zane and Corina Aguilar are and/or were the storage operators/owners that did business in the warehouse as a "self-storage" facility under the dba of Diversified Storage Solutions. Such storage solutions facility "blossoming" into the present day multi defendant, multi state conspiracy to commit felonies under the CSA by cultivating and distributing large amounts of marijuana and cannabis edible products.

101.     Plaintiff alleges on information and belief that defendants Dennis Thompson, Evan Zane and Corina Aguilar, concurrently operated Diversified Storage Solutions and a document shredding facility along with cannabis cultivation room(s) in the warehouse in cooperation with then owner of the warehouse, defendant Zivorad Zivanovic.

102.     Defendants Dennis Thompson, Evan Zane, and Corina Aguilar conspired with each of the other named defendants to set up large scale marijuana cultivation and distribution of marijuana and cannabis infused food products from the warehouse, thus defendants  Thompson, Zane and Aguilar conspired to commit felonies under the CSA which violates 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § (1961(1)(D).

103.     Defendants Thompson, Zane and Aguilar used mail, email, telephone and other forms of communication to arrange their business affairs with all other herein named defendants. The criminal use of such communication facilities violates 21 U.S.C. §843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

104.     Defendant Nancy Snider can be found at 2125 El Manto Drive unit 3 Rancho Cordova CA.95670. Plaintiff alleges on belief, that defendant Nancy Snider provides defendants SRG / EMF WEST and Z SQUARE with some type of illegal marijuana concentrate and/or food product in order to further SRG / EMF and Z SQUARE's criminal marijuana business within the warehouse.

105.     When Defendant Nancy Snider  agreed to provide illegal marijuana concentrates and/or other cannabis product(s) to the above named defendants, defendant Nancy Snider knew that the above named defendants were operating an ongoing criminal marijuana growing and distributing business from the

warehouse, and intended to further those efforts. In agreeing to provide illegal marijuana concentrates and /or product(s) to the warehouse and the above named defendants, defendant Nancy Snider conspired with SRG/EMF WEST and Z SQUARE to commit felonies under the CSA in violation of 21 U.S.C § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

106.    Defendant Nancy Snider used mail, email, telephone and other communication facilities to complete her negotiations with the above named defendants, and/or to complete her shipping and/or mailing of illegal cannabis concentrates and/or product(s) to the warehouse.

107.     The criminal use of such communication facilities violates 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C.  § 1961(1)(D).

108.     Defendant Ervin Yocum is a resident of the state of Illinois and the former owner of the land where the Edgewood marijuana cultivation facility  is located. Said cultivation facility is owned and/or controlled by defendants  Jon Loevy, Michael Kanovitz, Russell Ainsworth, and/or Richard Silverstein, all doing business as, and referred to herein collectively as  "EMF", or EMF WEST. Defendant Ervin Yocum sold the land to defendants  EMF contingent on EMF obtaining Illinois State Licensing to operate a marijuana cultivation facility in Edgewood.

109.    Plaintiff alleges on belief that Ervin Yocum would only sell the land to Effingham Medicinal Farms for value in addition to obtaining a position as trustee in EMF's  marijuana cultivation business  and to continue to reap the profits thereof.  When defendant Ervin Yocum sold the land to EMF, defendant Ervin Yocum had full knowledge that defendants EMF would use the land to construct an illegal marijuana cultivation facility.

110.    By agreeing to sell the land to EMF, and thereby further the criminal activities of EMF, and to thereafter become a trustee of EMF, defendant Ervin Yocum conspired with EMF to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

111.    Defendant Mike Williams can be found at 414 Lesser Street Oakland at the warehouse. Defendant Mike Williams colluded with SRG / EMF WEST and Z SQUARE to fulfill some role or function as yet undetermined within the warehouse.

112.    When he agreed to work in the warehouse with the above named defendants, defendant Mike Williams had full knowledge that all other defendants named herein were operating a criminal marijuana growing and distributing business and defendant Mike Williams intended to further those efforts.

113.    In agreeing to knowingly assist and further  EMF WEST and SRG's efforts to grow and distribute marijuana, defendant Mike Williams conspired with those hereinabove named defendants to commit felonies under  the CSA which is a violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

114.    Plaintiff alleges on belief that defendant Mike Williams used email, mail, telephone, and other communication facilities to assist/maintain/work in the warehouse and to communicate with all other defendants. The criminal use of such communication facilities violates of 21 U.S.C. § 843(b), and is racketeering activity under 18 U.S.C. § 1961(1)(D).

115.    Defendant Terah Olson can be found at 414 Lesser St., Oakland, CA. Plaintiff alleges on information and/or belief that defendant Terah Olson is one of the "Queen Pins" of the conspiracy to cultivate and/or distribute marijuana from the warehouse, and plaintiff alleges on belief that defendant Terah Olson in addition to providing funds for the purchase and/or renovation of the

First Amended Complaint-Civil RICO

18 U.S.C. 1961

28

warehouse to increase the existing illegal growing operation, is in place in the warehouse to manage operations.

116.    To that end, plaintiff alleges on belief that defendant Terah Olson collaborated with each of the other defendants to achieve the goal of setting up the illegal enterprise of cultivation and/or distributing of marijuana and cannabis infused food products out of the warehouse. When defendant Terah Olson agreed to provide funds and or collaborate with SRG and EMF WEST to set up large scale marijuana cultivation and/or distribution from the Oakland  warehouse, defendant Terah Olson conspired with SRG and EMF WEST to commit felonies under the CSA which is a violation of § 21 U.S.C. 846, which is racketeering under § 18 U.S.C. 1961(1)(D).

117.    Defendant Terah Olson used the mail, email, telephone and other communication facilities to effectuate her agreements and/or oversight of the ongoing criminal enterprise in the warehouse, which is a violation of 18 U.S.C. 843(b), which is racketeering activity under 18 U.S.C. 1961(1)(D).

118.    Plaintiff alleges on information and belief, that defendant DOES FINANCIAL INSTITUTIONS/BANKS  1 through 10 (hereafter "*BANKS*"), have their principal places of business in the following cities: Chicago Illinois, San Francisco California, Des Moines Iowa, Portland Oregon, and may be located at other as yet undiscovered locations throughout the United States. Each DOE *BANK*  maintain accounts that belong to  BEEHIVE DISTRIBUTOR; BEEHIVE DISTRIBUTION, INC.;  THIRD COAST INC; BAY PROPERTY GROUP; BORNSTEINLAW; SRG ENZO I; SRG ENZO II; TIDEWATER TRANSPORTER; Z SQUARE PROPERTIES; Z SQUARE; Z SQUARE PROPERTIES COMPANY; WES-CO INC; SRG 414 LESSER LLC; SILVERSTEIN REALTY GROUP LLC., SRG MANAGER LLC., THREE NYMPHS; SUNSHINE PRODUCE; EMF WEST INC; BIG SHOULDERS WEST; OAKLAND MANAGER LLC; HAYDEN MANAGER LLC; KEYPOINT CREDIT UNION; TD SERVICE COMPANY OF ARIZONA; OAKLAND 1852; TOP SHELF MEDICINALS; CYPRESS MANUFACTURING CO. EFFINGHAM MEDICINAL FARMS LLC; LOEVY & LOEVY; JESSIE STREET COLLECTIVE, LLC.,  AND/OR:  Russell Ainsworth; Daniel Bornstein; Abigail Bornstein; Daniel Cheung; Joel Feldman; Daniel Fineman; Tyler Forman; Bruce Goldstone; Gene Gorelick; Jeffery Gilles; Deidra Mae Harper; Joseph Janssen;

1

2   Michael Kanovitz; Gavin Kogan; Jeffery Gilles; Jon Loevy; Gospa Lucik; Dianne Murphy; Terah

3   Olson; Ashley Peterson; Dennis Thompson; Martin Schneider; Richard Silverstein; Nancy Snider;

4   Andrew Thayer; Mike Williams; Zivorad Zivanovic, Dimitry Shkolnikov, and DOES 11 through  30.

5       119.   Defendant Dimitry Shkolnikov does business as either BLOOM FARMS and/or

6   BLOOM ROOM and is the chief executive officer of JESSIE STREET COLLECTIVE which is a

7   state wide, and alleged on belief, nationwide distributor of marijuana and marijuana manufactured

8   products and devices for vaping marijuana oils. Defendant uses the internet to advertise its products

9   for sale nationwide, in violation of 21 U.S.C. §843(c)(2)(A). Defendant Dimitry Shkolnikov also uses

10  the telephone, email, mail, and other forms of communication  facilities to effect its nationwide

11  distribution of illegal marijuana products. Dimitry Shkolnikov mailed marijuana products to the

12  warehouse using mail and/or carriers, and used email, mail,  telephone and other communication

13  facilities to effectuate its contracts with, or sales to SRG 414/Z SQUARE/EMF WEST,  to provide

14  illegal marijuana products to the warehouse. The criminal use of communication facilities is a crime

15  under the CSA, and is a violation of 21 U.S.C. § 843(b), which is racketeering activity under 18

16  U.S.C. § 1961(1)(D).

17      120.   Defendant Dimitry Shkolnikov had full knowledge that when he filled orders for illegal

18  marijuana products to be shipped to the Oakland warehouse, that Defendants SRG 414, Z SQUARE,

19  and EMF WEST intended to distribute and/or sell those illegal marijuana products provided by

20  Dimitry Shkolnikov in order to further defendants SRG 414/Z SQUARE and EMF WEST's

21  conspiracy to commit crimes under the CSA, and defendant Dimitry Shkolnikov intended to

22  further those efforts, thus Dimitry Shkolnikov conspired to commit crimes under the CSA in violation

23  of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. §1961(1)(D).

24      121.   Defendant Zivorad Zivanovic is a California resident and does business as WES-CO

25  Industries; and Z-SQUARE PROPERTIES COMPANY. As an owner and/or key employee of WES-

26  CO, plaintiff alleges on information and belief that defendant Zivorad Zivanovic  operated the illegal

27  self-storage facility in the warehouse under the dba of Z Square Properties, and/or Z Square

28  Properties Company, worked in WES-CO as a designer, with the actual intent to obfuscate the

First Amended Complaint-Civil RICO

18 U.S.C. 1961

operation of the illegal self-service storage facility, operating without benefit of fictitious business name and/or Oakland city license, and additionally was a key player in the formation of the business plan to obtain a loan from defendant Keypoint, in order to augment the existing illegal marijuana grow operation  in the warehouse, and to obtain the requisite funds to both clear the warehouse of all existing tenants, in order to thereafter renovate the warehouse to better suit the purposes of the illegal cultivation  and/or distribution enterprise.

122.    To that end, plaintiff alleges on information and belief, that defendant Zivorad Zivanovic is one of the King Pins of the illegal enterprise's growing operation, and collaborated and/or conspired with each of the other defendants to work towards achieving the illegal goal of establishing a major illegal marijuana cultivating and/or distributing operation in and from the warehouse.   As a King Pin in the conspiracy, defendant  Zivorad Zivanovic has full knowledge of all of defendants respective agreements, contracts, arrangements, and fully knows and is aware of the fact that such agreements, contracts, arrangements were all done to form a conspiracy to renovate the warehouse in order to begin large-scale marijuana cultivation and distribution.

123.    Defendant Zivorad Zivanovic used funds, goods and services that move in interstate commerce to effectuate the day to day operation of the conspiracy and to further the ultimate goal of large-scale marijuana cultivation and distribution, thus defendant Zivorad Zivanovic conspired with each of the other herein named defendants to commit crimes under the CSA, which is a violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. §1961(1)(D).

124.    Defendant Zivorad Zivanovic used mail, email, telephone, and other communication facilities to effectuate contracts, vacate the warehouse of all then existing tenants, to contract for  tradesperson's services to renovate the warehouse, arrange financing, and a myriad of other day to day happenings to further the efforts of all defendants to commence large-scale marijuana cultivation in the warehouse. The criminal use of communication facilities is a crime under the CSA, and is a violation of 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

125.    The following defendants listed below are all corporations registered in California for the express purpose of setting up shell leaseholds within the warehouse, in order to obtain a loan from defendant Keypoint: OAKLAND 1852, Cal. Entity No. C3846576, filing date 12/02/2015;

126.    SUNSHINE PRODUCE, Cal. Entity No. C3851085, filing date12/17/2015; THIRD

COAST, INC., Cal. Entity No. C3851086, filing date 12/17/2015; BEEHIVE DISTRIBUTION INC.,

Cal. Entity No. C3851087, file date 12/17/2015;  TIDEWATER TRANSPORTER INC., Cal. Entity

No. C3851088, file date 12/17/2015; BRIGHT SIDE INC, Cal. Entity No. C3851089, filing date

12/17/2015; BIG SHOULDERS WEST INC., Cal. Entity No. C3852490, filing date 12/18/2015.

127.    After recording the above mentioned documents in Alameda County, all recorded

documents, including the memorandums of leases, the assignment of rents for said leases, and the

subordination, non disturbance and attornment agreements for said leases, were all mailed to SRG 414

LESSER LLC., C/O Loevy & Loevy 312 N. May Street Suite 100, Chicago Illinois 60607,

notwithstanding the fact that the mailing address for SRG 414 LESSER LLC., Cal. Entity No.

201532910293, filing date 11/20/2015,  is 540 Frontage Road Suite 3145 Northfield Illinois, 60093.

128.    The documents referred to herein were executed by defendant Richard Silverstein in

Chicago, by defendant Michael Kanovitz in Chicago, by defendant Andrew Thayer in Chicago, by

defendant Bruce Goldstone in Chicago, by defendant Joel Feldman in Chicago, by defendant

Russell Ainsworth in Chicago, and by defendant Deidra Mae Harper in Placer County California, all

executed documents being returned and/or mailed and/or sent via various forms of electronic and/or

hard copy mail, thereby implicating all of the above identified defendants as violating 21 U.S.C.

843(b).

129.    All the above identified corporations  in paragraph 126  were set up by Defendant

Richard Silverstein under the direction of defendants Russell Ainsworth, Jon Loevy, and Michael

Kanovitz, and with the collaboration of defendants Bruce Goldstone, Andrew Thayer,

Diedra Mae Harper, Joel Feldman, and Does defendants, for the specific purpose of establishing

fraudulent shell leaseholds in the warehouse to act as, and  to legitimize  security for the loan provided

by defendant KEYPOINT to defendant SRG 414 of  2.1 million dollars to be used to renovate the

warehouse to accommodate the illegal marijuana growing and distribution facility.

130.    These several fraudulent leases beginning in December of 2015 were either non-

existent in the warehouse well into almost a year of their stated duration, or hastily "set up" sometime

shortly after the beginning of May of 2016, when plaintiff began photo- documenting the interior

of the warehouse and the tear down of all the existing storage rental units taking place therein.

131.    Defendant TD SERVICE COMPANY OF ARIZONA (hereafter "TD"), acts as trustee of the loan originated by and between defendant SRG 414 LESSER LLC., and defendant KEYPOINT, the beneficiary on the loan.

# IV.
# FACTUAL ALLEGATIONS

**Federal Law Prohibits the Production and Distribution of Recreational and Medical Marijuana**

132.    Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act. 84 Stat. 1236. Among the purposes of the CSA was to reduce drug abuse and the illegitimate traffic in controlled substances in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

133.    When Congress passed the CSA, Congress found that "the illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American People," 21 U.S.C. § 801(2), and that "a major portion of the traffic in controlled substances flows through interstate and foreign commerce," *Id.* § 801(3). The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade.

134.    The CSA categorizes drugs according to a series of schedules, with the most dangerous falling under Schedule I. *See Id.* § 812(b). Schedule I drugs have "a high potential for abuse." *Id.* § 812(b)(1).

135.    In enacting the CSA, Congress classified marijuana as a Schedule I drug. *Id.* § 812(c). Congress thus deemed marijuana to have a high potential for abuse. *Id.* § 812(b)(1). By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration pre- approved research study. *Id.* §§ 823(f), 841(a)(1), 844(a).

136.     The large-scale manufacture and distribution of marijuana is a serious felony under the CSA. A first time offender convicted of producing or distributing 1,000 or more marijuana plants is subject to a sentence of 10 years to life imprisonment. *Id.* § 841(b)(1)(A). Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40 years imprisonment. *Id.* § 841(b)(1)(B). The cultivation and sale of smaller amounts of marijuana is punishable by maximum sentences that are in some cases as long as 20 years.

*See Id.* § 841(b)(1)(C), (D).  The CSA also criminalizes the possession of marijuana. Unless otherwise authorized by federal law, possession of marijuana by a first-time offender is punishable by up to 1 year imprisonment. *Id.* § 844(a).

137.     In addition to its prohibitions on cultivation, sale, and possession of marijuana, the CSA also forbids a wide range of other activities connected with the operations of a marijuana business.

138.     Thus, it is a crime to possess "any equipment, chemical, product, or material" with the intention of using it to manufacture marijuana, *Id.* § 843(a)(6), or to distribute any such material" with the knowledge that it will be used to manufacture marijuana, *Id.* § 843(a)(7). The CSA bars the use of a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, *Id.* § 843(b), and it is a federal crime to use the Internet to advertise the sale of marijuana, *Id.* § 843(c)(2)(A).

139.     Reinvesting the proceeds from marijuana operations is also a crime, *Id.* § 854(a), as is knowingly facilitating a financial transaction involving funds derived from manufacturing and selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960. It is also a crime to knowingly lease, rent, maintain, manage, or control a place where marijuana is manufactured or sold. 21 U.S.C. 856.

140.     Maintaining a marijuana business within 1,000 feet of a service station that sells fuel to commercial vehicles is an especially serious offense, *Id.* § 849, as is leading a group of five or more people who commit a continuing series of federal marijuana crimes, *Id.*  § 848. And attempting or conspiring to commit most of those crimes is also a criminal offense. *See Id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a).

141.     These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear; marijuana is a dangerous drug that is banned

throughout the United States. And because RICO defines most violations of the CSA as "racketeering activity", *see* 18 U.S.C. § 1961(1)(D), any business engaged in the commercial cultivation and sale of recreational and/or medical marijuana is a criminal enterprise for purposes of federal law. Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability that RICO imposes. *See Id.* § 1962(c), (d).

**California and the City of Oakland, and Illinois and the Towns of Effingham and Edgewood, Purport To Authorize the Production and Distribution of medical marijuana.**

142.    Despite the strict federal prohibitions on virtually every aspect of the commercial marijuana business, California and Illinois and many of their local jurisdictions have erected a marijuana regulatory regime that purports to authorize and seeks to regulate, tax, and promote those federal crimes.

143.    In 1996 California voters passed proposition 215, a medical use of marijuana initiative. Known as the Compassionate Use Act, state law was changed with the intention to ensure  patients and their primary caregivers who obtain and use marijuana for medical purposes upon recommendation of a physician would not be subject to criminal prosecution and encourage the Federal and State governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in need of medical marijuana.

144.    In 2003, the State Legislature passed and the Governor signed Senate Bill 420 which established a voluntary program for the issuance of identification cards to qualified patients to use marijuana for medical purposes.  The intent of this bill was to implement the Compassionate Use Act of 1996 in a manner that would allow qualified patients to obtain therapeutic marijuana without fear of arrest and prosecution. The bill also authorized qualified persons to form collectives so as to cultivate marijuana for medical purposes. As such, the identification card immunized a cardholder from unnecessary arrest and prosecution for possession, transportation and cultivation of marijuana for medical purposes.

145.    Presently, the California Department of Public Health (CDPH) administers the voluntary Medical Marijuana Identification Card Program (MMICP) and issues State-authorized medical marijuana identification cards. CDPH maintains a registry database for verification of qualified patients and their primary care givers.

146. The State Attorney's General's Office provides guidelines for the security and non-diversion of marijuana grown for medical use. In 2005, the State Legislature passed three bills, Assembly Bills 243 and 266 and Senate Bill 643 that create a licensing and regulatory framework for medical marijuana.

147. Known as the Medical Marijuana Regulation & Safety Act (MMRSA), the Act established a statewide regulatory scheme to be headed by the new Bureau of Medical Marijuana Regulation within the Department of Consumer Affairs, (DCA).

148. Although the State will issue licenses, the Act provides for a system of dual licensing: The State will issue licenses and local governments will issue permits to operate medical marijuana enterprises. At present, the DCA anticipates that regulations will be developed by January of 2018.

149. In November 2016, California passed Proposition 64, the Adult Use of Marijuana Act, which legalizes marijuana under state law, for use by adults 21 or older; imposes state taxes on sales and cultivation; provides for industry licensing and establishes standards for marijuana products; and allows for regulation and taxation.

150. Though medical marijuana was legalized by Proposition 215, and adult use of recreational marijuana by Proposition 64, neither Proposition 215 or Prop. 64 supersede federal law. Under federal law marijuana remains illegal.

151. Californians believe by their voting to legalize adult recreational use, that the fiscal impact on the state will be additional tax revenues ranging from high hundreds of millions of dollars to over $1 billion annually, mostly dedicated to specific purposes.

152. What Californians failed to take into consideration when they voted to legalize recreational marijuana, was the added cost to the taxpayer base of increased use of emergency personnel, vehicles, hospitals, police, and the inevitable human tragedy associated with, an increasing amount of accidents caused by "buzzed" drivers.

153. Proposition 64 sets forth a gamut of rules and regulations from state and local licensing, restrictions on signage along interstate highways and highways that lead to crossing state lines, as well as fines and punishment for marijuana use by minors among other things, all of which purport to make recreational use of marijuana by adults over the age of 21 "legal".

First Amended Complaint-Civil RICO

18 U.S.C. 1961

154.    As may be expected, California's efforts to promote the recreational marijuana industry will more likely than not yield substantial revenues for the state and local municipalities. For example, Oakland enacted City Ordinances 12077, 12584 and 13033 in order to implement Prop 215. California and local municipalities will thus enrich themselves by systematically authorizing, facilitating, and promoting serious federal drug crimes, and by allowing unscrupulous persons, financiers, banks, attorneys and those associated with such unscrupulous persons to lead a large percentage of the under thirty five population down the primrose path of self medicating (getting high) to the point of absurdity.

155.    Whatever the effect on state law of Propositions 215 and 64 and its implementing statutes and regulations, they do not---and cannot--- repeal the federal ban on recreational marijuana or medical marijuana use or the legal liability RICO imposes on those who operate or agree to assist recreational and/or medical marijuana businesses in violation of federal law.

## The Defendants Form Racketeering Enterprises that Produce and Distribute Recreational and/or Medical Marijuana

156.    On December 31st 2015, defendant SRG 414 Lesser LLC., and Hayden Manager LLC., (hereafter "SRG" and "Hayden" or "SRG") acting by and through their owner defendant Richard Silverstein, executed a Deed of Trust with defendant Keypoint Credit Union (hereafter "KEYPOINT") with TD Service Company of Arizona (hereafter "TD"), as trustee on the loan, in the amount of $2,100,000 dollars to purchase and/or renovate the warehouse located at 414 Lesser Street in Oakland, California. (Hereafter "warehouse", or "Oakland warehouse"). Plaintiff alleges on information and belief that TD knew that funds provided by defendant KEYPOINT to defendant SRG 414 / defendant Richard Silverstein, and those defendants associated with SRG, Z SQUARE, and EMF WEST, would be used to purchase and/or renovate the warehouse to further defendants' criminal enterprise of setting up an illegal marijuana growing and distributing facility, and that Richard Silverstein, and all those defendants associated with Richard Silverstein would make use of the funds provided by KEYPOINT to further said enterprise.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

157.     Plaintiff alleges on information and belief that defendant KEYPOINT had full knowledge that the funds provided to defendant SRG, Z SQUARE, EMF WEST, their agents, owners and/or managers, Richard Silverstein, Jon Loevy, Michael Kanowitz, and those defendants that associated and collaborated with the aforementioned, would be used to purchase and/or renovate the warehouse in order to commence an illegal marijuana growing and distribution operation/enterprise. It was understood and agreed upon by all parties to the loan transaction and their agents, that the warehouse would be used to grow and sell marijuana.

158.     Sometime shortly after SRG obtained the loan described in paragraph 55, SRG caused then warehouse manager Susan Barry-Miller to send an email to all existing warehouse tenants advising the tenants that the new owner would be keeping all the tenants, and that Estoppel Certificates had to be signed by all then current warehouse tenants.

159.     In March or April of 2016, defendant Z Square Properties Company / Zivorad Zivanovic, caused another email to be sent to the warehouse tenants, advising the tenants that the new owner had decided to clear out the warehouse of all tenants. In May of 2016, defendant Z Square Properties Company acting through its new book keeper Dianne Murphy, emailed all the warehouse tenants 30 days notice that the warehouse had to be completely vacated. Shortly thereafter, all tenants began to vacate the warehouse.

160.     By purchasing and/or renovating the warehouse to commence large-scale marijuana growing and distribution, SRG, Z Square Properties Company, WES-CO, EMF WEST and all other defendants who conspired with SRG/Richard Silverstein, Z Square and WES-CO and their respective owners/managers, all violated 21 U.S.C. § 856.

161.     Furthermore, documents on file in both the state of Illinois corporate, the state of California corporate, in addition to filings in Alameda County, and commonly available news pages on the internet, in addition to other commonly available and viewable internet pages, will show that defendants named in this paragraph, as well as defendants Jon Loevy, Ashley Peterson, Russell Ainsworth, Michael Kanovitz, Joel Feldman, Daniel Fineman, Daniel Bornstein, and other defendants referred to elsewhere in this complaint agreed and conspired, in violation of 21 U.S.C. § 846, to work together to promote efforts to grow and distribute marijuana not only in and from the warehouse in

Oakland, but from the grow facility in Edgewood Illinois, with distribution facility located in Effingham Illinois, known as Clinic Effingham.

162.    Thus a multi-state multi-defendant conspiracy came to fruition culminating in the purchase of land and/or warehouse(s) and construction of marijuana cultivation facilities in Edgewood Illinois and Oakland California.

163.    Plaintiff alleges on information and/or belief, that SRG / Richard Silverstein, Hayden Manager, KEYPOINT, TD, all used the telephone, mail, email, or other communication facilities to complete the unlawful real estate transaction between SRG, Hayden, Keypoint, Richard Silverstein,  , and TD. Such use of communication facilities violates 21 U.S.C § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

164.    Defendants applications to various Illinois state agencies and municipalities describes its ambitious plans to enter full force into the illicit marijuana market, by building state of the art marijuana growing facilities, and or renovating existing warehouse(s) to accommodate large-scale marijuana growing operations.

165.    On or about sometime before 2015, defendants Jon Loevy, Richard Silverstein, Michael Kanowitz, Russel Ainsworth, Joel Feldman, Daniel Fineman, Ashley Peterson, and/or their respective agents/authorized representatives,  applied for and were denied a permit from the town of Effingham Illinois to set up a marijuana growing facility in Effingham. Being thus put off by the town of Effingham, defendants and/or their agents / authorized representatives, then applied to the nearby town of Edgewood for the same permit to build a marijuana growing facility and were granted the permit.

166.    Plaintiff alleges on information and/or belief, that thereafter, defendants Jon Loevy, Richard Silverstein, Daniel Fineman, Ashley Peterson, Joel Feldman, Michael Kanowitz, Russell Ainsworth, and Does Financial Institutions in the state of Illinois, and/or Iowa, embarked on a course of conduct, each defendant working in concert with each of the other defendants, to purchase land in Edgewood and to build a state of the art marijuana growing facility in Edgewood Illinois, with the main distribution facility to be located in Effingham Illinois, and called Clinic Effingham.

167.    All defendants named herein, in addition to Does Financial Institutions yet to be discovered, could carry out these plans only by operating a continuing criminal enterprise in

violation of 21 U.S.C. § 848. Furthermore, defendant's plan to grow and sell recreational and/or medicinal marijuana would violate 21 U.S.C. § 841(a);

168.   Possessing the necessary facilities, equipment, and materials would violate 21 U.S.C. § 843(a)(6); and maintaining the premises to operate a recreational and/or medicinal marijuana business would violate 21 U.S.C. § 856.

169.   The warehouse is located just off of Highway 880 at the corner of Lesser Street and Tidewater Avenue, and just off of the Interstate 880 High Street Exit, which is a heavily used truck exit for truckers heading for the end of Tidewater Avenue to a trucking company located at the end of Tidewater Avenue. Several dozen trucks per day pass by the West facing side of the warehouse, with many trucks often parking directly in front of the loading docks leading into the warehouse, awaiting their turn to unload at the Tidewater Avenue trucking company located at the end of Tidewater Avenue.

170.   There is a gas station located at the High Street Exit, approximately 2,200 feet away from the warehouse.  Defendants Richard Silverstein dba SRG 414 LESSER LLC; HAYDEN MANAGER LLC, Keypoint and TD collectively entered into a Deed of Trust under which the warehouse would be used to commit numerous crimes under the CSA less than 2,500 feet from a truck stop, and that Deed of Trust violates 21 U.S.C. §§ 856 and 849.  All of those crimes are  racketeering activity under 18 U.S.C. § 1961(1)(D).

171.   Defendant Z Square Properties Company LLC owned the warehouse until December of 2015, when defendant Z Square Properties Company LLC sold the warehouse to Defendant SRG 414 Lesser LLC for the recorded amount of $3,875,000.

172.   On or about sometime subsequent to the purported sale of the warehouse, plaintiff received an email message from then Manager Susanne Barry-Miller that the new owner would be keeping all the current tenants.

173.   Subsequent to the sale of the warehouse, Plaintiff and all other then existing tenants in the warehouse were notified to mail their rent checks to defendant Daniel Fineman, addressed to Oakland Manager LLC at 1459 18th Street # 293 San Francisco, California. Said address was later discovered to be a mail box. On or about May of 2016, plaintiff as well as all other warehouse tenants, received a thirty day notice to vacate the premises.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

174.     All the above mentioned communications and payments of unlawfully collected rents involved the use of email, mail, telephone or other communication facilities to complete the unlawful rent collections and unlawful notices to vacate the premises. Such use of communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

175.     The purported sale of the property was a fraudulent "straw man" purchase set up by defendants Daniel Bornstein, Richard Silverstein, Jon Loevy, Russell Ainsworth, Michael Kanovitz, Zivorad Zivanovic, Abigail Bornstein, Keypoint Credit Union, in order to obtain loan(s) to purchase and/or renovate the warehouse, when the true intent was to obtain loans in order for defendants to be able to make payments on the mortgage note while at the same time vacating the premises of all paying tenants, while at the same time using the loan(s) to renovate the warehouse for a huge marijuana growing and distribution operation.

176.     To that end, defendants prepared fraudulent leases for non-existent lease holders to subordinate to Defendant Keypoint as security for the "purchase and/or renovation loan(s)". Plaintiff alleges on information and/or belief that defendants mentioned in this paragraph used the telephone, email, mail and other forms of communication facilities to execute the fraudulent leaseholds; and to file the leaseholders subordination agreements and the assignment of rents to Keypoint, in the County of Alameda; all in violation of 21 U.S.C. § 843(b), which is also racketeering activity under 18 U.S.C. 1961(1)(D).

177.     Plaintiff alleges on information and belief, that SRG, EFFINGHAM MEDICINAL FARMS LLC, EFM WEST, (collectively "EMF WEST") and their respective managers and/or owners and all other defendants working in concert with them, currently possess marijuana plants, equipment, and materials that they intend to use in their recreational and/or medicinal marijuana business in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6).

178.     To pay for the Edgewood facility, the Oakland warehouse, their respective constructions and /or renovations,  and its other illegal drug activities, defendants SRG/Richard Silverstein, Jon Loevy, Michael Kanovitz, Russell Ainsworth, Ashley Peterson, Joel Feldman, Daniel Fineman, Terah Olson, (collectively "EMF WEST") obtained loan(s) from defendant KEYPOINT and DOES Illinois and/or Iowa financial institutions.

179.     When they agreed to provide the necessary funding, defendants KEYPOINT and all other DOES defendant Financial Institutions/Banks had full knowledge of EMF WEST's plan to operate ongoing illegal drug enterprise(s) and intended to further those efforts. In agreeing to knowingly provide the financing that EMF WEST needed to operate its marijuana business with intent to further EMF WEST's criminal activities, defendants DOES FINANCIAL INSTITUTIONS/BANKS conspired with EMF WEST to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

180.     Plaintiff alleges on information and belief that EMF WEST its agents and/or owners and all those who conspired with EMF WEST, KEYPOINT and all other DOES FINANCIAL INTSTITUTIONS/BANKS all used the telephone, email, or other communication facilities to negotiate and complete their investments in the criminal enterprise. The criminal use of such communication facilities violates 21 U.S.C. § 843(b), and is racketeering activity under 18 U.S.C. 1961(1)(D).

181.     Defendant Zivorad Zivanovic while doing business in the warehouse as Z Square Properties Company and/or WES-CO, and defendants  Dennis Thompson, Evan Zane and Corina Aguilar  while doing business in the warehouse as Diversified Storage Solutions, had already established cannabis grow rooms in various units in the warehouse.

182.      When the warehouse was sold to defendant SRG 414 Lesser LLC, Defendants Thompson, Zane, Aguilar and Zivanovic had full knowledge that that it was the intent of defendant SRG 414 Lesser LLC and EMF WEST to continue and increase the scope of the existing growing operation(s) to cover and occupy the entire warehouse.

183.     Defendants Zivorad Zivanovic,  Dennis Thompson, Dianne Murphy, Gospa Lucik, Tyler Forman, who were all connected to daily warehouse management had full knowledge, and each defendant mutually agreed with SRG 414 Lesser LLC, Richard Silverstein, to form an enterprise each with the other, to further each defendants' efforts to continue to grow and distribute marijuana within the warehouse, after the sale/transfer of the warehouse to straw man buyer Richard Silverstein, SRG 414 Lesser LLC.

184.     When defendants named above all agreed to work towards the illegal goal of growing marijuana, all defendants committed felonies under the CSA in violation of  21 U.S.C. § 846,

which is racketeering activity under 18 U.S.C. § 1961(1)(D).

185.    Over and above all, Defendant KEYPOINT knew to a certainty that the loan proceeds to purchase the warehouse, were not supported by the fraudulent leaseholds, subordinated to KEYPOINT as security for the loan(s). Plaintiff alleges on belief that KEYPOINT had full knowledge, and knew to a certainty that the loan proceeds were going to be used to finance the renovation of the warehouse in order to expand the illegal marijuana grow operation to fill the warehouse.

186.    It was understood and agreed upon by all  parties to the real estate transaction and their agents that the warehouse at 414 Lesser Street was to be used to grow and sell medicinal and/or recreational marijuana.

187.    Plaintiff alleges on belief that it was understood and agreed upon by all natural person defendants in the caption of this complaint, that the warehouse was going to be vacated of all tenants in order to expand the existing illegal marijuana growing operation therein.

188.    By owning, managing, leasing, renovating, and/or maintaining the warehouse for use in the medicinal and/or recreational marijuana growing and/or distribution business, all natural person defendants named in the caption, as well as any as yet unidentified Does defendants and/or Does Financial Institutions, all violated 21 U.S.C. § 856.

189.    Furthermore, all natural person defendants named in the caption agreed and conspired, in violation of 21 U.S.C. § 846, to work together to promote efforts to expand the already existing illegal growing operation in the warehouse. Those crimes are racketeering activity under 18 U.S.C § 1961(1)(D).

190.    Plaintiff alleges on information and belief, that defendants SRG 414 Lesser LLC; Z SQUARE PROPERTIES COMPANY LLC; EMF  WEST, Richard Silverstein; Zivorad Zivanovic; KEYPOINT, all used the telephone, mail, email, or other communication facilities to complete the unlawful real estate transaction between SRG 414 Lesser LLC., and Z SQUARE PROPERTIES COMPANY LLC. The use by defendants of the above described communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

191.    SRG 414 LESSER LLC, and Z SQUARE PROPERTIES COMPANY LLC carried out their plan to vacate the warehouse of all then current tenants in order to renovate the warehouse to increase the scope and size of the illegal marijuana growing operation therein. The defendants could only carry out their plans by operating a

continuing criminal enterprise in violation of 21 U.S.C. § 848. Furthermore, defendant SRG 414 LESSER and defendant Z SQUARE PROPERTIES COMPANY LLC plans grow and sell medical and/or recreational marijuana would violate 21 U.S.C. § 841(a)(1); possessing the necessary facilities, equipment, and materials would violate 21 U.S.C. § 843(a)(6); and maintaining the premises to operate a medical and/or recreational marijuana business would violate 21 U.S.C. § 856. All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

192.    Plaintiff alleges on information and belief that SRG 414 LESSER LLC., Z SQUARE PROPERTIES COMPANY LLC., EMF WEST currently possess marijuana plants, equipment and materials that they intend to use, and/or are currently using to perpetuate and further their goals of growing and distributing medical and/or recreational marijuana as their business, in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6).

193.    To pay for the building, the required renovations, and its other illegal drug activities, defendant SRG 414 LESSER LLC., obtained financing from defendant KEYPOINT, and on belief, plaintiff alleges that defendants Jon Loevy; Daniel Bornstein, Daniel Cheung, Russell Ainsworth, Michael Kanovitz and Does 1 through 10, also provided funding and/or loan(s) to further the illegal growing operation.

194.    By virtue of KEYPOINT's knowledge of the ongoing criminal enterprise within the warehouse, and the loan(s) KEYPOINT made to SRG to expand said enterprise, KEYPOINT conspired with defendants SRG., Z SQUARE, EMF WEST, and Does 1 through 10 to loan monies to further the enterprise's drug crimes, thus violating 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

195.    When those above described defendants provided funds and/or loan(s), defendants and each of them had full knowledge that those funds and/or loans would be used by defendants SRG 414

LESSER LLC., Z SQUARE PROPERTIES COMPANY LLC., EMF WEST's  plans to operate an ongoing illegal drug enterprise and by providing said funds and/or loan(s), intended to further those efforts. In agreeing to knowingly provide funds that SRG and EMF WEST needed to operate its business with the intent to further SRG and EMF WEST's criminal activities, all

natural person defendants named hereinabove conspired with SRG and EMF WEST to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

196.    Plaintiff alleges on information and belief, that SRG 414 LESSER LLC., Z SQUARE PROPERTIES COMPANY LLC., EMF WEST, Jon Loevy, Michael Kanovitz, Daniel Bornstein, Abigail Bornstein, Daniel Cheung, Russell Ainsworth, Zivorad Zivanovic, Richard Silverstein, and Does 1 through 10 all used the telephone, email, or other communication facilities to negotiate and complete their investments in the criminal enterprise. The criminal use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

197.    Defendant Dianne Murphy works for Z SQUARE PROPERTIES COMPANY LLC., and WES-CO Industries, and is the accountant/bookkeeper for those two businesses.

198.    Defendant Dianne Murphy was one of the signatories on the fraudulent statements prepared by defendant Daniel Cheung in anticipation of obtaining a TRO against plaintiff Kevin Quillinan for the specific purpose of preventing plaintiff from photo documenting events occurring in the warehouse during the months of May and/or June of 2016, in order to prevent plaintiff from gathering evidence of the ongoing marijuana growing conspiracy. On information and belief, Dianne Murphy maintains Z SQUARE'S and WES-CO'S books and records and prepares their respective tax returns.

199.     As the accountant for those two businesses defendant  is compensated for her work and is aware of Z SQUARE'S and WES-CO's numerous violations of the CSA and its plans to operate an ongoing criminal enterprise in the warehouse.

200.      By agreeing to provide accounting services to WES-CO and Z SQUARE, and to sign a fraudulently prepared statement in anticipation of gaining a TRO against plaintiff, and thereby further Defendant SRG 414 and Z SQUARE/WES-CO'S criminal activities, Dianne Murphy conspired

with WES-CO and Z SQUARE, Jon Loevy, Michael Kanovitz, Russell Ainsworth, Richard Silverstein, Tyler Forman, Gospa Lucik, Daniel Bornstein, Daniel Cheung, Daniel Fineman, Ashley Peterson, Abigail Bornstein, and Does 1 through 10 to commit felonies under the CSA in violation of 21 U.S.C. § 846. which is racketeering activity under 18 U.S.C. § 1961(1)(D). Additionally Dianne Murphy as bookkeeper for WES-CO, Z SQUARE and Z SQUARE PROPERTIES COMPANY, defendant was also aware that WES-CO and Z SQUARE were operating an illegal self-service storage business and failing and/or refusing to report income taxes gained from said illegal self-service storage business.

201.    On or about sometime from 2012 up through 2015, defendant KEYPOINT and defendant Richard Silverstein dba as the following corporate entities: SRG 414 Lesser LLC; SRG Manager LLC; Oakland Manager LLC; Oakland 1852; Hayden Manager LLC; negotiated a loan of 2.1 million dollars to purchase and/or renovate the warehouse.  On information and belief, as security for the loan, defendant SRG 414 LESSER LLC., and defendant Z SQUARE offered to defendant KEYPOINT, between 20 and 30 estoppels signed by various then current warehouse tenants, plaintiff's wife Cyporette  included,  in addition to subordinating seven three year fraudulent leases as security for the loan.

202.    Plaintiff alleges on information and belief that defendant KEYPOINT was aware when KEYPOINT loaned the funds to SRG, that the estoppels  and that at least five of the seven three year leases were in fact fraudulent; that all the tenants of the warehouse would in fact be given thirty days notice to vacate at some point in time, and that at least five of the three year subordinated leaseholds that were supposed to establish in the warehouse, never appeared.

203.    In fact, subsequent to the warehouse becoming vacated of all of its prior tenants on or about May through June of 2016, the warehouse remained empty except for the illegally operating existing marijuana grow rooms operated by defendants.

204.    Plaintiff alleges on information and belief, that Keypoint Credit Union knew to a certainty that the loan funds would be used by SRG 414 LESSER LLC., and Z SQUARE to expand the illegal marijuana grow operation within the warehouse, and that the loans funds would be used to continue to pay the mortgage note on the loan using the loan funds, instead of the mortgage loan being paid by paying tenants within the warehouse.

205.     On information and belief, various permits may have, or were taken out by defendants which may have included permits to upgrade existing electrical wiring and/or plumbing on the exterior and interior of the warehouse to prepare the warehouse for additional electrical current draw and additional water usage for the grow operation(s).

206.     Plaintiff alleges on belief that each Does Tradesman that performed work on the warehouse had full knowledge of the purpose of said renovations, and that the warehouse was going to be used to illegally grow marijuana, and were thus aware of the purpose of the renovations and the broader SRG., and Z SQUARE EMF WEST drug conspiracy. By agreeing and conspiring with WES-CO Industries, SRG., Z SQUARE and EMF WEST to facilitate and/or commit violations of the CSA, those as yet unidentified Tradesmen violated 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

207.     All the defendants together formed an association-in-fact enterprise for the purpose of cultivating and selling medicinal marijuana at 414 Lesser Street in Oakland California. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiency in the cultivation and distribution of marijuana that none of them could have achieved individually.

208.     All of the defendants have contractual or other relationships with each other and are collaborating together to contribute to the association-in-fact enterprise's efforts to cultivate and distribute medicinal and/or recreational marijuana at the warehouse and thereby engage in an ongoing pattern of racketeering activity. Defendants SRG 414 LESSER LLC., Z SQUARE PROPERTIES COMPANY LLC., KEYPOINT CREDIT UNION, EMF WEST, Richard Silverstein, Jon Loevy, Michael Kanovitz, Russell Ainsworth, Dianne Murphy, Gospa Lucik, Daniel Bornstein, and Daniel Cheung, and Does 1 through 10, all directly or indirectly participated in the financial transactions through which SRG 414 LESSER LLC. , took possession of the property at 414 Lesser Street in Oakland, California for the purpose of violating the CSA, and all of them thus have knowledge of each other and their respective roles in the enterprise.

209.     Defendant WES-CO Industries., and/or defendant Zivorad Zivanovic in his capacity as contractor for the renovation of the warehouse, and/or defendant SRG 414 LESSER LLC., / Richard Silverstein, in his capacity as "owner" of the warehouse, may have signed a building

First Amended Complaint-Civil RICO

18 U.S.C. 1961

permit that includes the names of SRG 414 LESSER LLC., and/or Z SQUARE PROPERTIES COMPANY LLC., and/or WES-C) Inc.

210.    Regardless of whether defendant(s) KEYPOINT, Dianne Murphy, Michael Kanovitz, Russell Ainsworth, Daniel Bornstein, Daniel Cheung, Jon Loevy knew the *identities* of all of the other members of the enterprise, each of them knows that *someone* is performing the essential roles of the other defendants in furtherance of the enterprises' criminal efforts to operate a medicinal and/or recreational marijuana growing and distribution business at the warehouse.

211.    Plaintiff alleges on information and belief, allege that Jon Loevy, Michael Kanovitz, Russell Ainsworth, Ashley Peterson, Daniel Bornstein, Abigail Bornstein, Richard Silverstein,  Zivorad Zivanovic make many if not all of the enterprise's important decisions. In essence, they are the King Pins of the racketeering enterprise.

212.    Each of the herein named King Pins makes decisions in their respective right and capacities, whatever those rights and capacities may be, to operate the Edgewood grow facility, and to effect the purchase and/or renovation of the warehouse to accommodate the planned medicinal and/or recreational marijuana growing and distribution operation(s).

213.    On information and belief, all herein named defendants consult with Does 1 through 10 and with each of the other when making such decisions because each defendant and Does 1 through 10 defendants each have provided substantial financial backing and/or various types of expertise to operate the enterprise.

214.    Because the plan to expand the grow operation in the warehouse began with Zivorad Zivanovic, Daniel Bornstein, Abigail Bornstein, Richard Silverstein, Jon Loevy, Russell Ainsworth, Michael Kanovitz, Ashley Peterson, and Terah Olson, and each defendant plays a key role in the decision making and controlling of the enterprise, all the within above named defendants must be consulted before important modifications/renovations to the building are made.

215.    All of the defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of operating a medicinal and/or recreational marijuana grow and dispensary facility in the warehouse. As set forth above, that goal could only be accomplished through numerous violations of the CSA.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

216.     Each such violation of the CSA is racketeering activity, and all of the defendants thus knew and intended that in agreeing to assist the enterprise they would help it carry out a pattern of racketeering activity.

**The RICO Defendants' Marijuana Operations Injure the Plaintiff's Business and Property**

224.     Plaintiff's business and property has been injured as a direct and proximate result of Defendant's racketeering activities and conspiracy to engage in racketeering activities.

225.     The planned marijuana operation(s) at the warehouse necessitated the removal of ALL the then current rental units/tenants, plaintiff included. As a result of the notice to vacate within thirty days, and the lack of affordable available storage spaces to remove their personal and/or business property to, Plaintiff was forced to either give away, sell at substantial and deep discounts, or dispose of several thousand dollars of business and personal property that was stored in unit 14 in the warehouse.

226.     Because plaintiff had to remove from the warehouse on 30 days notice, and because plaintiff could not locate alternative affordable storage facilities to fit all of plaintiff's personal and business property, plaintiff was forced to either sell at deep discounts, and/or give away, and/or dispose of several thousand dollars worth of business property, stock in trade. Kevin and Cyporette are antique vendors who sell at outdoor antique markets. As a result of having to relocate to alternative storage facilities, plaintiff had to move his business and personal property into steel shipping containers without lighting, without electricity, and without a bathroom or other convenience facility such as internet and/or 24 hour access.

227.     As a direct result of defendant's conspiracy to illegally grow marijuana in the warehouse, and Plaintiff's voluntary, then forced removal from their storage unit 14, Plaintiff has suffered damages to his personal and business property as alleged above, in an amount to be proven at trial.

228.     Plaintiff continues to incur additional damages in the form of additional expenditures for gasoline and bridge tolls in order to access his alternative storage facilities, in order to maintain operating as they did prior to losing their storage unit in the warehouse.

229.     Plaintiff's alternative storage facilities located at San Lorenzo and Treasure Island, have no electricity, no internet, no bathroom, and are cramped steel shipping containers, and are generally unpleasant to make use of and make it exponentially difficult for Kevin and Cyporette

First Amended Complaint-Civil RICO

18 U.S.C. 1961

to operate out of, given that plaintiff is elderly and physically disabled, and so is plaintiff's wife Cyporette..

230.    Since on or before January of 2011, defendants Russell Ainsworth, Jon Loevy, Michael Kanovitz, Richard Silverstein, Ashley Peterson, and Does defendants, have each maintained checking and/or savings and/or business accounts with various Does defendant Financial Institutions in Chicago Illinois, Oakland California, and/or San Francisco California. Accordingly, plaintiff  reserve the right to name any and all financial institutions that may be discovered to have serviced and/or kept any accounts in the names of any and all defendants, and to name those as yet to be discovered financial institutions as defendants in any amended complaint.

231.    Plaintiff alleges on information and/or belief that all Does Financial Institutions co-mingled defendant's funds from each of their respective business and/or personal accounts with accounts that were used to further the illegal criminal enterprise to violate the CSA by setting up, and/or renovating, illegal marijuana growing and distribution facilities in both Illinois and California.

232.    Plaintiff  alleges on information and/or belief that all Does Financial Institutions that keep accounts for any and all herein named defendants, knew to a certainty and were and are aware that monies from an illegal marijuana enterprise were being deposited into any such accounts from any and all herein named defendants. Accordingly, any and all Does Financial Institutions conspired with all defendants to assist the enterprise's drug crimes, thus violating 21 U.S.C. § 846, which is racketeering activity  under 18 U.S.C. § 1961(1)(D).

233.    Since on or before May of 2016, various Does defendant trades persons have been renovating the Oakland warehouse so that it will have the facilities, equipment, and materials necessary for operating an ongoing illegal recreational and/or medical marijuana growing and distribution facility. Does defendant trades persons  worked on the warehouse with the knowledge that the warehouse was to be used for growing and/or distributing illegal marijuana, and thus by working on and renovating the warehouse, were aware of the purpose of the renovations and the broader SRG Marijuana drug conspiracy. By agreeing and conspiring with SRG to facilitate violations of the CSA, defendant Does trades persons violated 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

234.    All of the defendants together formed an association-in-fact enterprise for the purpose of cultivating and selling recreational and/or medicinal marijuana at the warehouse. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the cultivation and distribution of marijuana that none of them could have achieved individually.

235.    All of the defendants have contractual or other relationships with each other and are collaborating together to contribute to the association-in-fact enterprise's efforts to cultivate and distribute recreational and/or medicinal marijuana at the warehouse, and thereby engage in an ongoing pattern of racketeering activity.

236.    SRG, WES-CO, Z SQUARE, Richard Silverstein, Jon Loevy, Michael Kanovitz, Russell Ainsworth, Ashley Peterson, Daniel Fineman, Daniel Bornstein, Abigail Bornstein, Bruce Goldstone, Joel Feldman, Terah Olson, Andrew Thayer, Daniel Cheung, Dennis Thompson, KEYPOINT and TD and all Does Financial Institutions, all directly or indirectly participated in the financial transactions through which SRG took possession/ownership of the warehouse at 414 Lesser Street in Oakland California for the purpose of violating the CSA, and all of them thus have knowledge of each other and their respective roles in the enterprise.

237.    Regardless of whether KEYPOINT and/or TD know the identities of all of the other members of the enterprise, each of them knows that *someone* is performing the essential roles of the other defendants in furtherance of the enterprise's criminal efforts to  operate a recreational and/or medicinal marijuana cultivation  facility in the warehouse at 414 Lesser Street.

238.    On or about sometime prior to December 2016, Defendants BIG SHOULDERS WEST, SUNSHINE PRODUCE, BEEHIVE DISTRIBUTOR, THREE NYMPHS, EMF WEST, THIRD COAST, TIDWATER TRANSPORTER, BRIGHT SIDE, INC., applied for and obtained "tax certificates" from the city of Oakland business tax department for the business classification of  "Z CANNABIS". The several tax certificates purport to lend credibility and legality to the illegal violations of the Controlled Substances Act.

**WHEREFORE, Plaintiff prays for relief as set forth below.**

## CLAIMS FOR RELIEF

# COUNT I
## [Violation of 18 U.S.C. § 1962(c)]
## [Against all Defendants]

239.     Plaintiff  re-alleges and incorporates hereto the allegations of the preceding paragraphs as though fully set forth herein. RICO creates a private right of action for "any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962.18 U.S.C. § 1964(c).

240.     Under 18 U.S.C. §1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Each and every one of the above defendants identified under Count I violated this provision of 18 U.S.C. § 1962.

241.     All of the Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C § 1961(4) by establishing contractual and other relationships with each other and collaborating to develop the cannabis cultivation facility in Edgewood Illinois, the cannabis distribution facility, the Clinic Effingham, in Effingham Illinois, and the cannabis cultivation and distribution facility within the warehouse at 414 Lesser Street in Oakland, California, all effected and done for the sole purpose to cultivate and sell medicinal and/or recreational marijuana. This enterprise enables the Defendants to more efficiently achieve their collective purpose.

242.     Funding, goods and services procured by the enterprise have moved in interstate commerce, the enterprise plans to sell marijuana in interstate commerce, and the enterprise's operations caused plaintiff's injury in their business and to plaintiff's personal property, and continue to cause plaintiff to incur additional damages in the form of higher gasoline payments  bridge tolls, inconvenience and hardship associated with accessing their cramped fully packed shipping container in order to access and work with their business and personal property in contradistinction to how plaintiff was  used to working his business stock in trade, when plaintiff rented space in the warehouse. As a result of the negatively changed storage conditions, plaintiff continues to suffer a reduction in their ability to effectively prepare and market their stock in trade at the antique market(s), thus leading to loss of income all in an amount to be proven at trial.

243.    SRG 414 Lesser LLC, Z Square Properties Company, Effingham Medicinal Farms LLC., EFM WEST, Richard Silverstein, Jon Loevy, Russell Ainsworth, Michael Kanovitz, Terah Olson, Daniel Bornstein, Abigail Bornstein, Ashley Peterson, Zivorad Zivanovic, (collectively referred to in this Count as "EFM WEST") and the remaining defendants identified under Count I each has some part in directing the enterprise's affairs. Richard Silverstein applied    for tax certificates from the city of Oakland for the various leases in the Oakland warehouse, Jon Loevy applied for Illinois license/permits for the Edgewood cultivation facility, and Jon Loevy also owns and controls both Effingham Medicinal Farms and  alleged on belief, also owns a controlling interest in Clinic Effingham.

244.   Plaintiff alleges on belief, that Richard Silverstein and Jon Loevy consults with John Doe 1 before making important financial decisions for the enterprise.

245.    Jon Loevy as owner of Effingham Medicinal Farms and Clinic Effingham, and Richard Silverstein as owner of record of the Oakland warehouse, each play an important role in deciding how the buildings are going to be used, and/or renovated and/or modified to accommodate the enterprises' medicinal and/or recreational marijuana operations.

246.    EMF WEST, Jon Loevy, John Doe 1, Richard Silverstein, and each and every one of the Defendants identified under Count I, have all conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity. They collectively entered into leases, and/or purchases of real property where the Oakland warehouse will be used to commit numerous crimes under the CSA less than 3,000 feet from a truck loading and offloading facility, and those leases and/or purchases of real property for such use in such close proximity to a truck loading/offloading facility violate 21 U.S.C. §§ 849 and 856.

247.    They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of EMF WEST's open-ended illegal marijuana business. Plaintiff alleges on information and belief, that Defendants used communication facilities to enter into their leases and/or purchase agreements and their drug conspiracy in violation of 21 U.S.C. 843(b).

248.    Plaintiff alleges on information and belief, that EMF WEST  already possess marijuana and materials and goods required for the manufacture of cannabis products and /or the cultivation of marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 843(a)(6). All of those crimes are

racketeering activity under 18 U.S.C. § 1961(1)(D).

249.    The racketeering activity of EMF WEST has proximately damaged Plaintiff's business and property. The purchase, vacating and subsequent renovation of the Oakland warehouse caused Plaintiff's damages as described within the preceding paragraphs, and continue to cause further monetary damages to Kevin and Cyporette  in the form of higher gasoline payments  and bridge tolls.

## COUNT II
### [Violation of 18 U.S.C. § 1962(d)
### [Against All Defendants]

250.    Plaintiff re-alleges and incorporates hereto the allegations of the preliminary allegations as though fully set forth herein.

RICO creates a private right of action for any person injured in his business or property by reason of a violation of 18 U.S.C. §1962. 18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

251.    The Defendants, for their mutual and individual profit, agreed and conspired to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of cultivating and selling recreational and/or medicinal marijuana at the Edgewood facility in Edgewood Illinois, the Clinic Effingham in Effingham Illinois, and the Oakland warehouse in Oakland California. The defendants knew that their patently unlawful scheme could only be accomplished through a pattern of racketeering activity, which entailed maintaining premises at which marijuana is cultivated and sold, by the cultivation and sale(s) of marijuana, and possessing the goods and materials needed to cultivate and process marijuana. All crimes under the CSA. *See, e.g.,* 21 U.S.C. §§ 841(a)(1), 843(a)(6), 856. Funding, goods, and services procured by Defendants in furtherance of their association-in-fact enterprise for the purpose of cultivating and selling medicinal and/or recreational marijuana have moved in interstate commerce, the enterprise plans to sell marijuana in interstate commerce, and the enterprise's operations have injured Plaintiff's business and personal property and continue to cause damages to Plaintiff as alleged in the preceding paragraphs.

252.    The Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c). All of the Defendants violated 21 U.S.C. § 846 by agreeing and

conspiring to assist in the establishment of Effingham Medicinal Farms, Clinic Effingham, SRG 414, Z Square, and EMF WEST's medicinal and/or recreational marijuana business. And SRG 414, Z Square and their respective owners/agents entered into a real estate agreement to operate a medicinal and/or recreational marijuana cultivation facility and retail sales and distribution location(s) within 1,000 feet of a highly trafficked truck loading and off loading facility in violation of 21 U.S.C. §§ 856 and 849.

253.    Those racketeering activities directly and proximately injured Plaintiff's business and personal property. The leasing and/or subsequent purchase and complete vacating of all the tenants in the warehouse, this Plaintiff included, caused Plaintiff to either sell his business and/or personal property at deep discounts, give business and/or personal property away, or just dispose of business and/or personal property for not being able to locate sufficient alternative affordable storage space on vacating the warehouse, and forced plaintiff to incur additional expenses in the form of higher per square foot storage payments, higher gasoline usage and payments, and bridge tolls, all in an effort to continue to operate as Plaintiff had operated while renting space in the Oakland warehouse.

254.    Furthermore, the prospect of lost business income, higher costs of having to operate a business out of cramped, steel shipping container(s) without lighting, without electricity, without cover from the elements, without a bathroom, paying higher gasoline costs and bridge tolls, is exponentially daunting for two physically disabled elderly folks such as Kevin and Cyporette. Plaintiff has even considered having to give up his antique vending business due to the increased hardships presented by their current storage situation, all caused as a direct and proximate result of Defendant's racketeering activities alleged of herein.

# COUNT III
## [Violation of 18 U.S.C. § 1962(c)]
**[Against all Natural Person Defendants in the Caption of this Complaint, DOES 3 through 20, and the below California and Illinois Corporations/Business Entities Identified in Paragraphs 258-259 and the Caption of this Complaint]**

Plaintiff re-alleges and incorporates hereto the preliminary allegations as though fully set forth below.

255.    RICO creates a private right of action for "any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities

of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The below listed defendants among others, and DOES yet to be identified, violated 18 U.S.C. § 1962(c).

256.     Defendants Richard Silverstein; Jon Loevy, Michael Kanowitz, Joel Feldman, Russell Ainsworth, Daniel Bornstein, Abigail Bornstein, Zivorad Zivanovic, Joseph Janssen, Robert Weakley, Gavin Kogan, Daniel Cheung, Jeffery Gilles, Mark Ainsworth, Ashley Peterson, Terah Olson, Daniel Fineman, Bruce Goldstone, Andrew Thayer, Dimitry Shkolnikov, and any other natural person defendants identified in the caption of this complaint, along with DOES 10 through 30.

257.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4).

258.     SRG 414 Lesser LLC;  Cypress Manufacturing Company;  Legal One;  Keypoint Credit Union;  Z Square Properties Company, LLC; WES-CO, Inc.; Beehive Distribution Inc.;  710 Combinator Company;  EMF West Inc;  Grupo Flor Corporation; Indus Holding Company, Jessie Street Collective LLC., **are all California Corporations,** thus they are all RICO "enterprises.

259.     Oakland Manager LLC; Hayden Manager, LLC; Effingham Medicinal Farms, LLC; LLC., **are all Illinois corporations**, thus they are all RICO "enterprises".

260.     Defendant Richard Silverstein is the owner of SRG 414 Lesser LLC., among other California and Illinois corporate entities. He therefore has a role in directing its affairs.

261.     Richard Silverstein has conducted or participated in the conduct of the affairs of SRG 414 Lesser LLC., through a pattern of racketeering activity. On information and belief, Richard Silverstein already possesses marijuana plants and equipment and materials for growing marijuana that he intends to use in his recreational and/or medicinal marijuana business in violation of  21 U.S.C. §§ 841(a) and 843(a)(6).

262.     Richard Silverstein has used the internet, telephone, email, mail, and other communication facilities to take steps in furtherance of SRG 414's drug related activities  in violation of 21 U.S.C. § 843(b). He agreed to purchase a warehouse where marijuana is to be cultivated and sold at 414 Lesser Street in Oakland, within 1,000 feet of a truck loading and unloading facility, in violation of

21 U.S.C. §§ 856 and 849. In fact, semi-trucks regularly park in long lines at the side of the warehouse on Tidewater Avenue, waiting to either load, or unload at truck facilities located at the end of Tidewater Avenue.

263.     Richard Silverstein agreed and conspired with the other defendants to violate numerous provisions of the CSA by growing and selling marijuana in violation of 21 U.S.C. § 846. All of these crimes are racketeering activity under 18 U.S.C § 1961(1)(D).

264.     Funding, goods, and services procured by Richard Silverstein for SRG 414 have moved in interstate commerce, SRG 414 plans to sell marijuana in interstate commerce, and SRG 414's operations have injured, and continue to injure plaintiff's business.

265.     Defendant Silverstein's racketeering activities directly and proximately injured plaintiff's business and property. Those activities led to plaintiff having to relocate his business and personal property to inferior storage facilities, adding burden, costs, and additional travel time to plaintiff's methods of operation, resulting in a loss of revenue and business and personal property.

## COUNT IV
### [Violation of 18 U.S.C. § 1962(d)]
### [Against all Defendants and Does Banks/Financial Institutions 1 Through 10.]

266.     Plaintiff re-alleges and incorporates hereto the allegations of the preliminary allegations as though fully set forth below.

267.     RICO creates a private right of action for "any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962."

268.     18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(d),  it is "unlawful for any person to conspire to violate any of the provisions of  subsection (a), (b), or (c) of this section." All natural person defendants, all DOES financial institutions/banks, and all DOES natural person defendants, directly associated with defendants Richard Silverstein, Jon Loevy, Zivorad  Zivanovic, identified in the caption of this complaint, and Keypoint Credit Union and TD Service Company of Arizona, agreed and conspired to violate 18 U.S.C. § 1962(c).

269.     An "enterprise" for purposes of RICO "includes any…partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). All business entities identified in Count III of

this complaint above, are either California or Illinois corporations and /or Limited Liability Companies, thus combined, they are RICO "enterprises".

270.    Funding, goods, and services procured by defendants for SRG 414, EMF WEST and those other previously identified business entities, for the purpose of cultivating and/or distributing marijuana have moved in interstate commerce, those above identified businesses intend to sell marijuana in interstate commerce, and those business entities directly and/or indirectly injured plaintiff's business and/or personal property.

271.    All defendants are each associated with SRG 414, EMF WEST, Z SQUARE,  and agreed to help each of those defendants establish and operate a recreational and/or medicinal marijuana cultivation facility at the Oakland warehouse.

272.    All defendants each understood that their collective efforts to establish and operate the recreational and/or medicinal marijuana operations at the Oakland warehouse could only be accomplished through a pattern of racketeering activity. Specifically, all understood and agreed that defendant Richard Silverstein, Jon Loevy, Zivorad Zivanovic, and those defendants directly and indirectly associated therewith, would violate the CSA by cultivating recreational and/or medicinal marijuana and selling it, in violation of 21 U.S.C. § 841(a), by possessing the equipment and materials necessary for marijuana cultivation, *id.* § 843(a)(6), and maintaining the Oakland warehouse as a location for cultivating and distributing recreational and/or medicinal marijuana and cannabis infused food product(s), less than 1,000 feet from a truck stop, *id.* §§ 856, 849. Each of those crimes is racketeering activity, and together they form a pattern.

273.    Racketeering activities undertaken in furtherance of the conspiracy among all other defendants with Defendants Richard Silverstein, Jon Loevy, Zivorad Zivanovic, and those defendants associated directly and indirectly with them, have injured plaintiff's business and personal property. Defendants Richard Silverstein, Jon Loevy, Zivorad Zivanovic and those associated directly and/or indirectly, are maintaining the Oakland warehouse as a premises for cultivating and/or distributing and/or selling recreational and/or medicinal marijuana in violation of 21 U.S.C. §§ 856 and 849. Richard Silverstein, Jon Loevy, Zivorad Zivanovic and those directly and indirectly associated with those defendants have all agreed and conspired to violate the CSA under 21 U.S.C. § 846.

First Amended Complaint-Civil RICO

18 U.S.C. 1961

274.     Those racketeering activities in furtherance of the conspiracy to violate 18 U.S.C. § 1962(c)  has forced plaintiff to incur added burden, costs, inconvenience, loss of business and personal property, in a fruitless attempt to mitigate plaintiff's decline in income from plaintiff's market vending business.

**COUNT V**
**[Violation of 18 U.S.C. § 1962(c)]**
**[Against Defendants Zivorad Zivanovic, Richard Silverstein, Jon Loevy, Michael Kanowitz, Russell Ainsworth, Ashley Peterson, Terah Olson, Gospa Lucik, Dianne Murphy, Jeffrey Gilles, Gavin Kogan, Robert Weakley, Dimitry Shkolnikov, and DOES 3 through 20.]**

Plaintiff re-alleges and incorporates hereto the preliminary allegations as though fully set forth below.

275.     Defendant Zivorad Zivanovic owned the warehouse which is within 1,000 feet of a truck loading and offloading facility, and also within 2,000 feet of an interstate highway, that was sold to defendant Richard Silverstein for the purpose of being renovated to begin large scale marijuana cultivation and distribution into interstate commerce. Those renovation activities directly interfered with plaintiff's business operations.

276.     Each of the defendants named above in this Count conducted or participated in the renovation of the warehouse and continues to oversee the cultivation operations of SRG 414, EMF WEST, Z Square, through a pattern of racketeering activity. In violation of 21 U.S.C. §§ 856 and 849, Zivorad  Zivanovic sold the warehouse to Richard Silverstein with the intention that the warehouse be used for large scale marijuana cultivation and/or distribution within 1,000 feet of a truck stop. And in violation of 21 U.S.C. § 846, Zivorad Zivanovic/Z Square and WES-CO, and those closely associated with them, agreed to assist SRG 414/Richard Silverstein,  Jon Loevy in their efforts to develop the warehouse for large scale marijuana cultivation and distribution. Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D), and together form a pattern.

277.  The racketeering activities undertaken by Zivorad Zivanovic/Z Square; Richard Silverstein/SRG 414; Jon Loevy, Michael Kanowitz, Russell Ainsworth, Ashley Peterson/ EMF WEST; Zivorad Zivanovic, Tyler Forman, Gospa Lucik, Dianne Murphy/WES-CO; CYPRESS MANUFACTURING/ Robert Weakley, Gavin Kogan, Jeffrey Gilles, and those unidentified DOES closely associated with the defendants identified above,  have proximately injured plaintiff's business by

First Amended Complaint-Civil RICO
18 U.S.C. 1961

forcing plaintiff to relocate his business and personal property, to incur additional burden, costs, time expenditures, inconvenience, in order for plaintiff to attempt to mitigate his damages, with the result that plaintiff has suffered, and continues to suffer and incur significant losses in revenue from plaintiff's antique  market vending business.

## COUNT VI.
### [Violation of 21 U.S.C. § 843(c)(2)(A)]
### [Against Defendant Dimitry Shkolnikov]

Plaintiff re-alleges and incorporates hereto the preliminary allegations as though fully set forth below.

278.  21 U.S.C. § 843 (c)(2)(A) provides that " it shall be unlawful for any person to knowingly or intentionally use the Internet, or cause the Internet to be used, to advertise the sale of, or to offer to sell, distribute, or dispense, a controlled substance where such sale, distribution, or dispensing is not authorized…." Dimitry Shkolnikov used the internet as a method of advertising Bloom Farms brand cannabis infused and cannabis related products to the general public, and used the internet as a method of soliciting prospective purchasers of Bloom Farms cannabis derived, and cannabis related product. The criminal use of the internet to advertise the sale of a controlled substance is a crime under the CSA, thus defendant Dimitry Shkolnikov violated 21 U.S.C. § 843(c)(2)(A), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

279.    When Defendant Dimitry Shkolnikov sold or provided cannabis infused, and cannabis related products to Richard Silverstein dba SRG, Zivorad Zivanovic dba Z SQUARE, Jon Loevy, Russell Ainsworth, Michael Kanowitz dba EMF WEST, defendant had full knowledge that SRG 414/Z SQUARE/EMF WEST would use those marijuana products in furtherance of defendant's efforts to commit crimes under the CSA, and defendant Dimitry Shkolnikov intended by said sales of marijuana products, to further those efforts, thus Dimitry Shkolnikov committed crimes under the CSA, which is a violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. §1961(1)(D).

280.    Defendant used the telephone, mail, email, and other forms of communication to form the contracts, send invoices, to sell cannabis infused, and cannabis related products, to defendants named above at lines 5-7. The criminal use of such communication facilities is a crime under the CSA and violates 21 U.S.C. § 843(b), which is racketeering activity under 18 U.S.C. § 1961(1)(D).

**Reservation of Rights to Bring State Court Action For Common Law Torts and Unfair Business Practices**

Plaintiff reserves the right to bring a state Court action against defendants for among other causes of action, the common law torts of Trespass to Chattels; Conversion; Negligence; Wrongful Eviction, and Unfair Business Practices, violation of California Business and Professions Codes 17200 et seq.

# PRAYER FOR ORDERS AND JUDGMENT

**WHEREFORE, Plaintiff prays for an ORDER and JUDGMENT:**

1. Judgment for treble damages to Plaintiff's business and property that were caused by Defendants' racketeering activities and conspiracies to engage in racketeering activities.

2. An order directed at Defendants that they Cease and Desist from engaging in any further racketeering activity in violation of the CSA.

3. An order that Defendants pay Plaintiff's cost of suit and reasonable fees incurred in preparing all pleadings, for service of process, and for bringing this action before the Court.

4. Granting such other and further relief as this Court deems just and proper.

Date: March 16, 2017        Respectfully submitted by   

Kevin Quillinan, Plaintiff  in pro per.

# Plaintiff's Verification of First Amended Complaint

I Kevin Quillinan declare, I am the plaintiff in the above titled FIRST AMENDED COMPLAINT.  I prepared the amended complaint of my personal knowledge and information and when called, I am competent to testify to the truthfulness of the allegations in the Amended Complaint. If I have made any allegations based on belief, I believe those allegations to be true.

My First Amended complaint may contain allegations pertaining to wrongful eviction, trespass to chattels and conversion and/or unfair business practices.  However, those allegations are for informational purposes only, and are not meant to state a cause of action, or to litigate the subject matter of those causes of action within this amended complaint.  I specifically reserve my right to bring those causes of action before the state Court in Alameda County.

I declare under penalty of perjury of the laws of the United States and California, that the above is true and correct, and that this declaration was executed by me on this 16th day of March of 2017 at Berkeley California.

Date: March 16, 2017

By_____

Kevin Quillinan, plaintiff in pro per.